**PHILADELPHIA RESISTANCE et al.**

v.

**John M. MITCHELL, Individually and as Attorney General of the United States et al.**

**Civ. A. No. 71–1738.**

United States District Court,
E. D. Pennsylvania.

Dec. 27, 1972.

David Rudovsky, Philadelphia, Pa., for plaintiffs.

C. Oliver Burt, III, Philadelphia, Pa., Peter T. Straub, Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION AND ORDER

VANARTSDALEN, District Judge.

Defendants have refused to answer certain interrogatories filed by plaintiffs, claiming the sought-for information is privileged as constituting information concerning an on-going criminal investigation. Plaintiffs have filed a motion to compel answers under Rule 37, Federal Rules of Civil Procedure. The history of this case is outlined in a Memorandum and Order filed August 3, 1972, wherein I directed the government to produce before me for an *in camera* inspection documents supporting its claim of investigatory privilege. Upon examination of the documents submitted, I have concluded that the government can properly assert a claim of privilege since it possesses information rendering the plaintiffs as subjects of a valid ongoing investigation for law enforcement purposes.

■ The next step is to examine individually the plaintiffs' interrogatories to determine if the circumstances are appropriate to invoke the privilege. Bristol-Myers Co. v. Federal Trade Comm., 138 U.S.App.D.C. 22, 424 F.2d 935 (1970). In deciding if the information requested should be withheld, the court must employ the balancing test developed by the Supreme Court in United States v. Reynolds, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953).[1] The necessity of the moving party in securing this information must be weighed against the nature of the information and the governmental need in withholding this material. The moving party's necessity will govern the extensiveness of the court's probe in determining the appropriateness of the circumstances, as stated in United States v. Reynolds, *supra,* at 11, 73 S.Ct. at 533.

In each case, the showing of necessity which is made will determine how far the court should probe in satisfying itself that the occasion for invoking the privilege is appropriate. Where there is a strong showing of necessity, the claim of privilege should not be lightly accepted, but even the most compelling necessity cannot overcome the claim of privilege if the

1. The recited case involved military secrets where the necessity for nondisclosure may well be more urgent than in normal police investigations of crime.

court is ultimately satisfied that military secrets are at stake. *A fortiori*, where necessity is dubious, a formal claim of privilege, made under the circumstances of this case, will have to prevail. Here, necessity was greatly minimized by an available alternative, which might have given respondents the evidence to make out their case without forcing a showdown on the claim of privilege. By their failure to pursue that alternative, respondents have posed the privilege question for decision with the formal claim of privilege set against a dubious showing of necessity. (footnote omitted).

■ In the present case, the government, while being the sole source of much of the requested information, retains this information in its investigatory files. Although the plaintiffs certainly have no right to rummage through these files, Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176, (1969), they are entitled to certain information if disclosure of that information is necessary to presentation of their case and does not jeopardize the government's ongoing criminal investigation.

■ The government also objects to plaintiffs' interrogatories on the ground that plaintiffs lack standing to obtain this information. Unlike the claim of privilege, standing does not present a major obstacle to plaintiffs' discovery motion. To establish standing, "a private individual . . . must show that he has sustained, or is immediately in danger of sustaining, a direct injury . . . and it is not sufficient that he has merely a general interest common to all members of the public." Ex Parte Levitt, 302 U.S. 633, 634, 58 S.Ct. 1, 82 L.Ed. 493 (1937). Plaintiffs have alleged that they have sustained direct injury or are in immediate danger of sustaining direct injury as a result of de-

fendants' actions, which actions plaintiffs assert violate their constitutional rights. In Laird v. Tatum, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972), the court found that plaintiffs lacked standing when they alleged that their First Amendment rights were being chilled because of the mere existence, and nothing more, of Army surveillance. The Court, in discussing cases where government regulation or action had been found to "chill" or violate First Amendment rights stated:

> In none of these cases, however, did the chilling effect arise merely from the individual's knowledge that a governmental agency was engaged in certain activities or from the individual's concomitant fear that, armed with the fruits of those activities, the agency might in the future take some *other* and additional action detrimental to that individual. Rather, in each of these cases, the challenged exercise of governmental power was regulatory, proscriptive, or compulsory in nature, and the complainant was either presently or prospectively subject to the regulations, proscriptions, or compulsions that he was challenging.

*Id.* at 11, 92 S.Ct. at 2324.

I believe that this case fits squarely into the latter category. Unlike Laird, plaintiffs are here challenging much more than mere Army surveillance which was described by the circuit court merely as good newspaper reporting. Rather, they allege that the government has conducted excessive surveillance involving physical violence, threats, illegal searches and seizures, illegal electronic surveillance and the denial of the right to counsel. At this stage, the record indicates that the plaintiffs allege they have sustained sufficient injury to entitle them to obtain the information requested, in the absence of any overriding claim of investigatory privilege.[2]

2. At the present pleading stage, allegations of fact are sufficient to show the requisite injury needed under *Ex Parte Levitt*.

Finally, the government refuses to answer plaintiffs' Interrogatories Nos. 3, 8, and 16 claiming an informer privilege and asserting that any disclosures would be premature and prejudicial to its criminal investigation. The government maintains that Interrogatory No. 8 is also unduly burdensome. In addition to its objections on the preceding grounds, the government asserts that Interrogatories Nos. 19 through 27 request legal conclusions. Interrogatory No. 28 is objected to on the same basis as the preceding interrogatories and also because it requests disclosure of FBI investigative interests, techniques, procedures and practices.

Plaintiffs' Interrogatory No. 3 requests:

3. With regard to paragraph 12 of Defendants' Answer state:

a) which plaintiffs have been the subject of investigation by the Federal Bureau of Investigation with respect to the burglary of the Media Resident Agency of the Federal Bureau of Investigation;

b) on what basis and information this investigation was conducted; and

c) the directives given to agents of the Federal Bureau of Investigation concerning the manner in which the investigation was to be conducted.

■ The information requested in 3a and b constitutes the heart of the FBI's investigation. Disclosing this information could undermine the efforts of the investigating officers by jeopardizing possible arrests in the Media burglary. I am aware that obtaining this information would be helpful to plaintiffs (but not essential) in preparing this case. However, this information is highly sensitive and vital to the public security and should not be disclosed at this time. If this information had to be disclosed, any individual who considered himself a criminal suspect could claim constitutional infringements of his rights, institute a civil suit against the government, and employ the 3(a) and (b) civil discovery procedure as a subterfuge to gain entry to the investigatory files of the government. Such interference with police investigation I will not permit.

■ As to Interrogatory 3(c), if, and insofar as it appears from the investigatory records that special directives as to the general manner of conducting the investigation were given, as opposed to detailed instructions, the government shall answer. In responding to this, the government is necessarily given some discretion but must honestly evaluate the information available. Failure to answer in good faith compliance may subject the government to later sanctions.

Plaintiffs' Interrogatory No. 8 requests:

8. With regard to paragraphs 19 and 20 of Defendants' Answer, specify by date, time and duration the "numerous spot checks and limited observations" referred to, the name of the agent(s) who conducted each one, the license number(s) of the vehicle(s) used, and the names of the individual plaintiffs and others who these agents were attempting to locate or interview.

■ The government should furnish the plaintiffs with the date, time and duration of the "numerous spot checks and limited observations" and also the names of the agents conducting these observations and the license numbers of the vehicles used. I do not view this information as so highly sensitive or injurious to the public interest as to outweigh the necessity of the plaintiffs in receiving this material. The information concerning the extent of surveillance constitutes a major element of plaintiffs' claims, disclosure of which will not be premature or appear to impair the ongoing criminal investigation.

The government also objects that the assembling of this information will be unduly burdensome. Conceding that it may be time-consuming, the court is

willing to grant any reasonable extension of time required to answer this interrogatory.

 The defendants do not have to disclose the names of individual plaintiffs whom the governmental agents were attempting to locate. This information is privileged and should be withheld from the plaintiffs for the same reasons that the information requested in 3a and b has been withheld. To answer might well "tip-off" suspects.

Plaintiffs' Interrogatory No. 16 requests:

16. State whether any of the plaintiffs have ever been photographed by defendants and/or their agents during the course of the "observation" and/or "limited investigation" admitted in Defendants' Answer. If so, state the date of the photograph(s) the name of the individual(s) taking them, and the name of the person(s) photographed. State also whether Defendants or their agents have been supplied with or have been granted access to photographs of plaintiffs in the possession of any other law enforcement authorities, including but not limited to the Philadelphia Police Department; and, if so, by whom and to whom such access was given or granted, and as to which plaintiffs.

 The defendants strongly assert that plaintiffs lack standing to obtain this information since the taking of photographs pursuant to a criminal investigation is not unconstitutional. This may be true if the governmental photographs taken in public places constituted the sole mode of alleged harassment. But here the photography must be viewed in consideration with the other allegations of the plaintiffs. Like the whole being greater than the sum of its parts, so does possible injury generated by one act have a cumulative effect on all the other alleged improper acts. Although the taking of photographs may in and of themselves be completely prop-

er, when combined with allegations of physical violence, threats, excessive surveillance, illegal searches and seizures, illegal electronic surveillance, and the denial of the right to counsel, this normally proper activity may become suspect of being excessive. By focusing upon the whole chain of alleged acts of harassment rather than on one, a cumulative injury may be displayed. The plaintiffs should be entitled to receive information concerning the date of the photographs, the names of individuals taking them, and the name of the person photographed during the limited observation of the Philadelphia Resistance Office at 611 South Second Street and the Philadelphia Resistance Commune at 3605 Hamilton Street. The defendants need not disclose any information concerning photographs received from other law enforcement authorities as this could not cause any legal injury to plaintiffs under allegations of the complaint.

Plaintiffs' Interrogatories 19 through 25 request:

19. With respect to each of the plaintiffs, their officers, agents, members of employees (hereafter jointly referred to as "plaintiffs"), please state whether defendants, their agents, employees, of predecessors in office (hereinafter jointly referred to as "defendants"), have at any time engaged in any method (including but not limited to wiretap or other electronic surveillance devices and laser beam detection) of abtaining [sic] the contents of conversations:

a. to which plaintiffs were parties; or

b. which originated on the home or business premise of any plaintiff; including but not limited to the offices of the American Friends Service Committee and Philadelphia Resistance; or

c. in which any acts or activities of plaintiffs were discussed.

20. State the contents of all policy statements, regulations authorizations

or other directives which govern the manner of determining whether or not surveillance has taken place and which were used to supply the information necessary to Defendants' Answer Paragraph No. 3 with regard to paragraph 50 of the Complaint. In lieu thereof, true copies may be submitted.

21. With respect to each occasion on which the surveillance referred to in Interrogatory 19 above occurred, please state the reason(s) why such surveillance was undertaken.

22. With respect to each occasion on which the surveillance referred to in Interrogatory 19 above occurred, please state the contents of all tapes, transcripts, logs, records, memoranda, authorizations, and any other record of such surveillance. In lieu thereof, true copies may be submitted.

23. With respect to each occasion on which the surveillance referred to in Interrogatory 19 above occurred, please state the legal basis and authority for conducting such surveillance.

24. Please set forth all instances in which an application for a court order authorizing electronic surveillance relating to Plaintiffs in the manner described in Interrogatory 19 was sought and denied.

25. Please set forth all instances in which a request by a member of the Executive Branch, including but not limited to Defendant Hoover, his subordinates, agents or employees, for electronic surveillance relating to Plaintiffs in the manner described in Interrogatory 19a–c was denied by Defendant Mitchell or any other member of the Executive Branch including the President of the United States. For each instance, please state:

a. Who initiated such request;

b. The reasons, including the factual basis, therefor;

c. Who denied the request;

d. The reasons for such denial;

e. The contents of all memoranda, correspondence, directives, policy statements or other instructions and records relating to such request and denial;

f. Whether such surveillance did in fact take place.

The government primarily asserts that these interrogatories are burdensome, that the plaintiffs lack standing to compel the information and that the information is privileged.

After plaintiffs filed their interrogatories, the government submitted an amended answer denying that the plaintiffs have been the subjects of any electronic surveillance. Although the government maintains that none of the plaintiffs or their premises were the subject of electronic surveillance, the government has admitted in its amended answer that certain plaintiffs' conversations were overheard during the course of warrantless national security wiretaps directed not at the plaintiffs, but others.

The amended answer of the government supplies most of the information requested in Interrogatory No. 19. The unanswered portion of this interrogatory seeks privileged information which the government does not have to disclose.

The amended answer also disposes of Interrogatory No. 24; indeed, any court denial of an order authorizing electronic surveillance would have been made available to the persons named in the order pursuant to 18 U.S.C. § 2518(8)(d) unless the denial has occurred within the past ninety days.

 Interrogatories Nos. 20, 21, 23 and 25 seek information beyond the scope of discovery and need not be answered by defendant.

 With respect to Interrogatory 22, I will not compel the government, at this time, to divulge the contents of its electronic surveillance, but I will require that the plaintiffs be given the date,

time, and duration of their overheard conversations. The Supreme Court in United States v. United States District Court, 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972), declared that warrantless national security surveillances are unconstitutional. If plaintiffs' rights have been violated by these illegal surveillances, there exists a cause of action under 18 U.S.C. § 2520; Kinoy v. Mitchell, 331 F.Supp. 379 (S.D.N.Y. 1971) and also under the Fourth Amendment, Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The government contends that the plaintiffs' rights were not violated because the plaintiffs were only a party to and not the subject of the illegal wiretap. But the plaintiffs are in a similar position to the petitioner in Gelbard v. United States, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972). There, the Supreme Court held that the petitioner, a grand jury witness whose conversation was *overheard* during a wiretap placed on the phone of another, was an "aggrieved person" under 18 U.S.C. § 2510(11) and could invoke 18 U.S.C. § 2515 as a defense to a contempt action for failure to answer questions based upon his intercepted conversation. If the petitioner in *Gelbard* had standing to invoke the provisions of 18 U.S.C. § 2515, then the plaintiffs in this case should have standing to invoke the remedy provisions of 18 U.S.C. § 2520.

▉ It is true that the legislative history of the Omnibus Crime Control and Safe Streets Act of 1968, 2 U.S. Code Cong. & Admin.News, 90th Cong., 2d Sess., 1968, states at 2196 that "Injunctive relief, with its attendant discovery proceedings, is not intended to be available. (Pugach v. Dollinger, 365 U. S. 458, 81 S.Ct. 650, [5 L.Ed.2d 678,] (1961))." The case cited by the legislative history, involved a denial of a motion to enjoin state officials from divulging evidence in a state *criminal* trial where introduction of such evidence would have constituted a violation of a federal criminal statute. Reading the legislative history's reference to discovery proceedings in concert with *Pugach*, I am of the opinion that Congress only intended to limit discovery in the context of criminal and not civil proceedings. Under these circumstances, the plaintiffs are entitled to know the date, time, and duration of their overheard conversations. While the plaintiffs did not specifically request this information, their interrogatory seeking the contents of the conversations is comprehensive and impliedly includes a request for the foregoing material.

The discoverability of the contents of an illegal wiretap in a purely civil proceeding need not be decided at this time. That determination will be delayed pending receipt of the information concerning the privileged nature of the requested contents.

Plaintiffs' Interrogatory No. 28 requests:

28. With reference to the photocopy of the Government Document attached hereto as Exhibit A, please state:

a. Is this photocopy in fact a true copy of the Government Document New Left Notes—Philadelphia, 9/16/70, Edition #1, attached hereto.

b. Who authored this document, to whom was it distributed, and who directed that this document be written and distributed;

c. With respect to the conference held at SOG (Washington, D.C.) and referred to in the Document please indicate who attended this conference, for what purpose the conference was held, and who authorized that it be held;

d. Under what legal authority was the document written and distributed;

e. What is the Governmental purpose(s) in "enhancing the paranoia of the new left;"

f. What steps, procedures, actions and policy decisions have been taken or made by defendants or any of their agents to implement the policy of "enhancing the paranoia of the new left;"

g. Which of the plaintiffs are considered in that section of the population denominated "new left;" and

h. Which of the plaintiffs have been the subject of the policy of "enhancing the paranoia of the new left," and state when, where, and under what circumstances the defendants or any of their agents implemented or attempted to implement this policy with respect to any plaintiff.

i. Has the newsletter, "New Left Notes," been produced since 9/16/70, and, if so, when and where has it been produced.

This interrogatory involves Exhibit A, an alleged government memorandum entitled, "New Left Notes—Philadelphia" that was apparently stolen from the FBI files in Media, Pennsylvania. The document refers to a conference held in Washington, D. C., and states that it was agreed that the "New Left" should be interviewed in an effort to increase its paranoia and "further serve to get the point across that there is an FBI Agent behind every mailbox." After the document was stolen, it was released to the public news media and has become the subject of public debate and editorial comment.

 I do not believe that any harm will ensue from having the defendants answer Interrogatory No. 28(a) and (b). Although the document was originally stolen, it has since been distributed to the public. The government may be correct in stating that law enforcement officers have never before been required to identify "the alleged fruits of a crime currently under investigation." But a document does not automatically become inadmissible at trial because it has by some persons un-

known, been stolen. It is well established that documents stolen by private individuals and subsequently given to the government can be used in a criminal prosecution of the documents' owner, if the government did not participate in the illegal procurement nor had any prior knowledge of it. Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L. Ed. 1048 (1921). The plaintiffs in this case may occupy the same position as the government in *Burdeau* since the document was apparently released to the public after it was stolen. Under these conditions, information concerning Exhibit A is discoverable notwithstanding the fact that it may be a stolen document.

The name of those who authorized and distributed the document and those who directed that these actions be undertaken, along with the fundamental question of whether Exhibit A is indeed a government document, constitutes one of the important bases of the plaintiffs' case. This essential information is obtainable only from the government and disclosure will cause minimal, if any, injury to the public interest, or the ongoing investigation of its theft. If, in fact, it can be proved that plaintiffs were the alleged thieves, then the document probably could not be used by them at the trial. Also, the information in 28(a) and (b) involves events transpiring seven months before the theft. For these reasons, the government should answer Interrogatory No. 28(a) and (b).

 Requests 28(c) through (i) will be denied in that they request legal conclusions and interpretation of Exhibit A, questions beyond the scope of discovery.

### ORDER

AND NOW, this 27th day of December, 1972, the defendants are ORDERED to answer plaintiffs' Interrogatory No. 3c to the extent indicated in the foregoing opinion; Interrogatory No. 8 as to the date, time and duration of the "numerous spot checks and limit-

ed observations of the Philadelphia Resistance Office, 611 South Second Street and the Philadelphia Resistance Commune, 3605 Hamilton Street," the name of the agents who conducted each one and the license numbers of the vehicles used; Interrogatory No. 16 as to the date of the photographs taken, the name of the individual taking them, and the names of the persons photographed; Interrogatory No. 22 as to the date, time and duration of plaintiffs' conversations overheard on warrantless national security electronic surveillances; Interrogatory 28(a) and (b). Plaintiffs' motion to compel answers to interrogatories is DENIED as to Interrogatory No. 3a and b; Interrogatory No. 8 as to the names of the individuals whom governmental agents were attempting to locate or interview; Interrogatory Nos. 19, 20, 21, 23, 24, 25; and 28(c) through (i) inclusive.