Muhammad **KENYATTA** et al.,
Plaintiffs,

v.

Clarence **KELLY** et al.,
Defendants.

Civ. A. No. 71–2595.

United States District Court,
E. D. Pennsylvania.

March 29, 1974.

Burton Caine, Philadelphia, Pa., and John H. F. Shattuck, Melvin L. Wulf, New York City, for plaintiffs.

Robert E. J. Curran, U. S. Atty. by John R. Sutton, Asst. U. S. Atty., Philadelphia, Pa., and Gordon Daiger, U. S. Dept. of Justice, Washington, D. C., for defendants.

## OPINION

DITTER, District Judge.

This is a civil rights action for declaratory and injunctive relief brought by the plaintiffs to enjoin the defendants from gathering information about lawful and peaceful activities protected by the First Amendment, and from harassing and intimidating plaintiffs through a pattern of illegal acts from exercising their freedoms of speech and assembly.

Faced with general denials by the defendants, plaintiffs filed two discovery motions. First, they requested admissions by the defendants as to the authenticity of certain documents affixed to their complaint. Second, they propounded interrogatories regarding the organization, function, statutory authority, and investigative activities of the Federal Bureau of Investigation to then-defendant, J. Edgar Hoover (now by operation of FRCP 25 the defendant, Clarence Kelly). The defendants objected to the request for admissions and some of the interrogatories on the grounds that the information sought was privileged from discovery in the public interest. Plaintiffs then filed a motion to compel answers to their interrogatories and to determine the sufficiency of the objection to their request for admissions. The defendants submitted an *in camera* response to these motions on the issue of privilege from disclosure in the public interest. After oral argument I concluded the *in camera* response was proper.

## IN CAMERA SUBMISSION

■ The only appropriate method for considering the defendants' claim of privilege was by an *ex parte in camera* examination of the facts underlying that assertion. This type of procedure has been sanctioned by many courts. See, e. g., Bristol-Myers Company v. FTC, 138 U.S.App.D.C. 22, 424 F.2d 935 (1970); Machin v. Zuckert, 114 U.S.App.D.C. 335, 316 F.2d 336 (1963); Frankenhauser v. Rizzo, 59 F.R.D. 339 (E.D.Pa.

1973); Wellford v. Hardin, 315 F.Supp. 175 (D.Md.1970); Black v. Sheraton, 50 F.R.D. 130 (D.D.C.1970). As Judge VanArtsdalen said in Philadelphia Resistance v. Mitchell, Civil No. 71–1738 (E.D.Pa., filed Aug. 3, 1972), "Normally, I would be reluctant to invoke this procedure [*In camera* inspection] for fear of tainting the impartiality of the judge by creating the impression of judicial privity with a party-litigant. But in determining the applicability of a claim of privilege, the Court is thrust into a role different than that normally assumed. Considering the possible injury from an improper exercise or non-exercise of the investigatory privilege, it is only the court, through an *in camera* examination that can objectively analyze the material and decide the merits of the privilege while concomitantly minimizing the effects of any disclosure."

## REQUEST FOR ADMISSIONS

The plaintiffs attached to their complaint photostatic copies of 11 documents which were allegedly stolen on March 8 and 9, 1971, from the offices of the Federal Bureau of Investigation located in Media, Pennsylvania. Plaintiffs' first motion, brought pursuant to FRCP 36, requested admissions by the defendants as to the genuineness of these documents. The defendants objected on the grounds that the documents contained privileged information and because they had been stolen from the FBI.

The plaintiffs contend that the doctrine of privilege is not applicable to their request for admissions. Plaintiffs argue that if the documents ever were privileged, their status has changed by reason of the fact that they were stolen, their copies widely distributed to the media, and they were discussed by various government officials. According to plaintiffs, Rule 36 is not a discovery device at all since it presupposes that the party proceeding under it knows the facts or has the documents and merely wishes his opponent to concede their genuineness, citing 8 C. Wright & A.

Miller, Federal Practice and Procedure, § 2253, at 706. In effect, plaintiffs are saying that privilege can only be asserted as to matters which have not been divulged.

■ I disagree. Like Rules 33 and 34, Rule 36 is specifically tied to Rule 26(b)(1), which provides that parties may obtain discovery regarding any matter "not privileged." Thus, an ". . . objection will lie if a request goes beyond the scope of discovery as broadly defined in Rule 26(b). Privileged information is not within that scope; a request is improper when a valid objection of privilege would lie if the request, reformulated as a question, were put to the party at trial." Wright & Miller, supra, § 2262, at 734. Thus, the right to object on the grounds of privilege is not lost merely because there has been disclosure.

■■ The FBI is charged with the responsibility of investigating the activities of those who violate the law. Concomitant with the duty to investigate the criminal must exist the privilege to investigate the suspect, for until information has been acquired, classified, analyzed, and disseminated neither guilt nor innocence can be even surmised. Whether the data is true or false and whether evaluative or factual in nature, the documents in question obviously contain privileged matter, gathered by the FBI in keeping with its responsibilities. Whether or not charges have been brought or a particular subject of inquiry is guilty or innocent does not affect the privileged nature of the information any more than the existence of the privilege means that under no circumstance will the contents of the documents be disclosed.

■ Ordinarily when privilege is asserted by the government it is for the purpose of maintaining confidentiality. The court then balances the needs of the plaintiff to obtain the information against the nature of that information and the governmental need to withhold it. United States v. Reynolds, 345 U.S. 1, 7–12, 73 S.Ct. 528, 531–534, 97 L.Ed.

727 (1953); Philadelphia Resistance v. Mitchell, 58 F.R.D. 139, 142–143 (E.D. Pa.1972).

Here, although the factors are different, the balance must be struck—not between secrecy and disclosure, but between the policy of the law which seeks to discourage theft and the policy of the law which seeks to minimize the costs of trial and its time requirements.

There is no suggestion that any of the plaintiffs had a part in the burglary which produced the documents from the Media FBI office. It is obvious, however, that the break-in was accomplished by persons who were (or became) sympathetic with the plaintiffs, antagonistic to the defendants, or both. It follows that if the plaintiffs are permitted to capitalize on this burglary to even a limited degree, those who committed it— and those of a similar disposition—may be encouraged to perpetrate other offenses of a like nature for like purposes. It is equally true that to whatever degree the plaintiffs are kept from obtaining benefit from that burglary, those benefits diminish in value and correspondingly, there is less incentive for those who are tempted to participate in criminal activities of this nature. For their part, the plaintiffs have not suggested that the introduction of these documents is essential to their case, or that if the defendants' objection to the request for admissions is sustained, plaintiffs cannot proceed. All the plaintiffs say is that if the defendants will admit the documents are genuine, it will lighten plaintiffs' burden and save the court time.

Thus, the balancing test becomes easy. Tempting as the suggested conservation of judicial effort may be, to encourage burglary—even just a little—is too high a price to pay. It is much more important for courts to discourage crime than to promote speedy trials.

Plaintiffs argue, however, that documents stolen by third persons may be introduced in evidence—even by the Government in a criminal case. In support of this proposition they cite Philadelphia Resistance v. Mitchell, supra, which in turn relied upon Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921). While I have great respect for Judge VanArtsdalen, who wrote the decision in *Philadelphia Resistance*, I question the validity of the *Burdeau* case in the light of the law's developments over the last 53 years and decline to follow it.

Since *Burdeau* was decided, a whole new philosophy has developed regarding the use of evidence which has been improperly obtained. For example, in Elkins v. United States, 364 U.S. 206, 80 S. Ct. 1437, 4 L.Ed.2d 1669 (1960), state officers, without the participation of any agent of the United States, had illegally seized evidence which was then introduced in a federal criminal action despite defendant's motion to suppress. The Supreme Court set aside the conviction, marking the end of the "silver platter" doctrine which had previously allowed prosecutions based on evidence obtained illegally and handed over to federal officers.

The Supreme Court's ruling that all states must invoke the exclusionary rule of evidence in any instance of an unconstitutional search and seizure;[1] the limitations placed on the interrogation process for both adults[2] and juveniles;[3] the regulation of identification procedures;[4] the restrictions on electronic surveillance;[5] and the requirements im-

---

1. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

2. Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966).

3. Application of Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

4. United States v. Wade, 388 U.S. 218, 87 S. Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

5. Compare Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928), with Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

posed for the prompt production of an accused before a magistrate [6] are merely illustrative of the many rulings that evidence obtained through illegal means may not be introduced.

I believe that if the *Burdeau* case came before the Supreme Court today, the reasoning expressed by the dissent of Mr. Justice Brandeis, in which Mr. Justice Holmes concurred, would prevail:

"... in the development of our liberty insistence upon procedural regularity has been a large factor. Respect for law will not be advanced by resort, in its enforcement, to means which shock the common man's sense of decency and fair play." 256 U.S. at page 477, 41 S.Ct. at pages 576–577.

The rule which excludes evidence improperly obtained from being received in criminal cases has also been applied in civil cases, particularly those which provide for a forfeit[7] or tax assessments.[8] The desirability of deterring improper conduct is a matter which a court can properly consider in exercising its discretion as to the exclusion of evidence. In the long run, truth is better served by straightforward procedures than by deception. Trans-Cold Express, Inc. v. Arrow Motor Transit, Inc., 440 F.2d 1216, 1219–1220 (7th Cir. 1971).[9]

This basic legal policy is found in other areas of the law. For instance, so far as trade secrets are concerned, an equity court can "enjoin the one in whom . . . confidence has been reposed from divulging it to third persons or from taking advantage of it himself to the injury of the one who has a right like a trade secret to have it protected as against one who has gained it by virtue of improper means." 42 Am.Jr.2d Injunctions § 75. Where trade secrets are obtained by wrongful methods, they are not entitled to protection. Cataphote v. Hudson, 422 F.2d 1290, 1295–1296 (5th Cir. 1970).

In the area of property law, the general rule is that a person can transfer no better title to a chattel than he himself has. Thus, one who has acquired possession of property by theft cannot confer title by a sale, even to a bona fide purchaser. 46 Am.Jur. Sales § 549.

Briefly, the policy of the law is and should be to discourage theft. For the reason indicated, I conclude that defendants may invoke the privilege against disclosure in the public interest, and that on balance, the defendants' objection to plaintiffs' request for admissions as to the authenticity of the stolen documents should be sustained.

### INTERROGATORIES

The plaintiffs also propounded to the defendant, Clarence Kelly, 143 interrogatories regarding the funct: ; , statutory authority, and investigative activities of the FBI. Many of the interrogatories were answered, but the same objection was raised as to many others, i. e., they should be privileged from disclosure in the public interest. Of the interrogatories to which objection was made, the majority were seeking data to supplement or explain matters revealed by the documents stolen from the FBI office in Media.

---

6. McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943), and Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957).

7. One 1958 Plymouth Sedan v. Commonwealth of Pennsylvania, 380 U.S. 693, 85 S. Ct. 1246, 14 L.Ed.2d 170 (1965); United States v. Plymouth Coupe, 182 F.2d 180 (3d Cir. 1950).

8. United States v. Blank, 261 F.Supp. 180 (N.D.Ohio 1966).

9. In Iowa v. Union Asphalt & Roadoils, Inc., 281 F.Supp. 391, 407–408 (S.D.Iowa, 1968), aff'd sub nom, Standard Oil Company v. Iowa, 408 F.2d 1171 and 409 F.2d 1239 (8th Cir. 1969), there are additional citations to support the conclusion that suppression of illegally seized evidence made proper procedure in a civil case. Cases on both sides of the issue may be found in 29 Am.Jr. 469, 31 A. C.J.S. Evidence § 187, p. 498, and Annot. 5 A.L.R.3d 67.

█ Judge Becker dealt with the problem of executive privilege as applies to discovery in Frankenhauser v. Rizzo, supra. He concluded, and I agree, that in a case where the privilege is asserted, the public interest in the confidentiality of governmental information must be balanced against a litigant's needs to obtain data, not otherwise available, which he requires to pursue a non-frivolous case. He then set forth ten criteria [10] which should be examined. Although *Frankenhauser* involved discovery of police investigation files, in contrast to the written interrogatories in the instant case, the governing principles are the same. In applying the various standards and comparing the competing interests, I conclude that the following interrogatories call for answers that are factual [11] in nature. Disclosure of this information will have little if any adverse effect on the defendants when balanced against the needs of the plaintiffs to obtain such data so they may pursue this cause of action. It will be understood, however, that the defendants' answering these interrogatories will not be construed as an admission that the documents attached to the complaint are copies of genuine FBI papers.

█ Interrogatories 11 and 12 [12] should be answered. Interrogatories 42 and 59 shall be answered as to *dates* only. Any information as to *circumstance* need not be provided as it is covered by the governmental privilege, being evaluative in nature. Interrogatories 61, 91 and 129 inquire as to those persons or agencies to whom certain information is disseminated. I conclude that these interrogatories must be answered as to non-governmental persons or agencies to whom the information was made available. If such information was circulated outside the government, it loses the protection which the privilege provides. Interrogatories 134, 135, 136, 137, and 142 inquire about recorded information concerning various plaintiff organizations, or their officers, directors, members or employees. These interrogatories are to be answered as to *organizations* only. As far as inquiring as to directors, officers, members or employees of such organizations, such answers would be impossible to provide without plaintiffs' identifying who such individuals may be. Interrogatories 58, 81, 96, 116, 138, 139, 140, and 141 will be answered unconditionally.

The remainder of the interrogatories inquire as to FBI procedures, instructions, practices, investigative files, opinions, evaluative summaries, internal memoranda, standards, and criteria. Having applied the *Frankenhauser* tests, I conclude these interrogatories need not be answered.

### APPENDIX

### INTERROGATORIES TO THE DEFENDANT, J. EDGAR HOOVER

The following interrogatories are served upon you pursuant to Rule 33, Federal Rules of Civil Procedure. They are to be answered separately and fully in writing under oath within thirty days. Where knowledge or information of the defendant is requested, such request includes knowledge of the defendant's agents, employees, servants, representatives and attorneys, and those act-

---

10. The extent to which disclosure will discourage providing information to the government; the impact upon persons in having their identities disclosed; the degree to which governmental improvement programs will be chilled by disclosure; whether the data *is factual or evaluative* in nature; whether the party seeking the discovery is an actual or potential defendant in a criminal case arising from the incident in question; whether the investigation has been completed; the existence of interdepartmental disciplinary proceedings; whether plaintiff's suit is frivolous or brought in good faith; whether the information is available from other sources; and the importance of the information to the plaintiff's case.

11. See Environmental Protection Agency v. Mink, 410 U.S. 73, 93 S.Ct. 827, 837, 35 L. Ed.2d 119 (1973).

12. Attached to this opinion is an appendix setting forth the interrogatories in issue.

ing under his control or direction or at his request.

These interrogatories are continuing in character so as to require you to file supplementary answers if you obtain further or different information before trial.

1. List all titles and sections of the United States Code and regulations promulgated thereunder which authorize in each instance the activities of agents, servants, employees, and informants of the Federal Bureau of Investigation [hereinafter "the Bureau"] described and recorded in Appendices A through K to the Plaintiffs' Complaint.

2. List all sections and page numbers in the Manual of Instructions referred to in Appendix F to the Complaint containing procedures and operating instructions in each instance for the activities of agents, servants, employees, and informants of the Bureau, described and recorded in Appendices A through K to the Complaint.

3. List the title, author, and date of issuance of all memoranda, directives, orders, or other documents setting forth procedures and operating instructions of the type described in Interrogatory No. 2 which are not contained within the Manual of Instructions.

4. Append to your answer to these interrogatories copies of all materials whose identification is sought in Interrogatories 1–3.

5. Describe· in detail the organizational structure of the Internal Security Division of the Bureau, including descriptions of all positions within the Division above the rank of Special Agent, areas of specific responsibility for each such position, superior officers within the Division or the Bureau to whom the person holding each such position must report and from whom he must receive and carry out instructions or directives, and the names and business addresses of all persons within the Division holding such positions above the rank of Special Agent.

7. List the title, author and date of issuance of all memoranda, directives, orders, or other documents establishing and setting forth the organizational structure of the Internal Security Division of the Bureau described in your answer to Interrogatory No. 5.

8. Append to your answer to these Interrogatories copies of all materials whose identification is sought in Interrogatory No. 7.

10. State with regard to each job designation in Interrogatory No. 9 the number of persons so employed by the Bureau.

11. To what do the initials "SI" refer in the following sentence which comprises the third paragraph of Appendix K to the Complaint: "In disseminating reports recommending for the SI it is preferable to designate and disseminate to Secret Service immediately and put the FD–376 (the buck slip to the Secret Service) on the second Bureau copy."

12. To what do the initials "AI" refer in the following sentence in the first paragraph in Appendix G to the Complaint: "The National Coordinator for NABS is on the AI."

18. List all sections and page numbers in the Manual of Instructions referred to in Appendix F to the Complaint containing a description of or reference to the criteria or standards to be used by agents, servants and employees of the Internal Security Division and/or other Division of the Bureau in determining whether to list a particular person or organization on (a) the Security Index, and/or (b) the Agitator Index.

19. List the author, title, and date of issuance of all memoranda, directives orders, or other documents setting forth criteria or standards of the type described in Interrogatory No. 18 which are not contained in the Manual of Instructions referred to therein.

20. Append to your answer to these interrogatories copies of all materials whose identification is sought in Interrogatories 18–19.

22. List all sections and page numbers in the Manual of Instructions referred to in Appendix F to the Complaint containing procedures and instructions for agents, servants and employees of the Internal Security Division of the Bureau with regard to the creation and maintenance of (a) the Security Index, and (b) the Agitator Index.

23. List the author, title, and date of issuance of all memoranda, directives, orders, or other documents setting forth procedures and instructions of the type described in Interrogatory No. 22 which are not contained in the Manual of Instructions referred to therein.

24. Append to your answer to these interrogatories copies of all materials whose identification is sought in Interrogatories Nos. 21–23.

25. List the date or dates when the Bureau began collecting information for and recording and maintaining the names of specific persons and organizations outside the Bureau in (a) the Security Index and/or (b) the Agitator Index.

32. If the answer to any one of Interrogatories 27–30 is affirmative, list all sections and page numbers in the Manual of Instructions referred to in Appendix F to the Complaint containing procedures and instructions for agents, servants and employees of the Bureau with regard to the preparation of the arrest warrants described in the Interrogatory or Interrogatories so answered affirmatively.

33. If the answer to any one of Interrogatories 27–30 is affirmative, list the author, title, and date of issuance of all memoranda, directives, orders, or other documents setting forth procedures and instructions of the type described in Interrogatory No. 32 which are not contained in the Manual of Instructions referred to therein.

34. Append to your answer to these interrogatories copies of all materials whose identification is sought in Interrogatories 31–33.

42. List the date and circumstances under which the name of the National Coordinator of the plaintiff National Association of Black Students was first recorded on the Agitator Index, as stated in the last sentence of the first paragraph of Appendix G to the Complaint.

43. State why the name of the National Coordinator of the plaintiff National Association of Black Students is or was recorded on the Agitator Index, as stated in the last sentence of the first paragraph of Appendix G to the Complaint.

44. List the title, author and date of any reports, memoranda, directives, or orders authorizing, bearing on or resulting from the recording of the name of the National Coordinator of the plaintiff National Association of Black Students on the Agitator Index, as stated in the last sentence of the first paragraph of Appendix G to the Complaint.

45. Append to your answer to these interrogatories copies of all materials whose identification is sought in Interrogatory No. 44.

46. Is the name of any individual named plaintiff or plaintiff organization, its members or officers, other than the individual referred to in Interrogatory No. 42, now recorded, or has it ever been so recorded, on the Agitator Index?

47. If the answer to Interrogatory No. 46 is affirmative, list the dates and circumstances in each instance under which the name of any individual named plaintiff or plaintiff organization, its members or officers, other than the individual referred to in Interrogatory No. 42, was recorded on the Agitator Index.

48. If the answer to Interrogatory No. 46 is affirmative, state in each instance why the name of any individual named plaintiff or plaintiff organization, its members or officers, other than the individual referred to in Interrogatory No. 42, was and/or is now recorded on the Agitator Index.

49. If the answer to Interrogatory No. 46 is affirmative, list the title, au-

thor and date of any reports, memoranda or directives authorizing, bearing upon or resulting from the recording in each instance of the name of any individual named plaintiff or plaintiff organization, its members or officers, other than the individual referred to in Interrogatory No. 42, on the Agitator Index.

50. Append to your answer to these interrogatories copies of all materials whose identification is sought in Interrogatory No. 49.

51. Is the name of any individual named plaintiff or plaintiff organization, its members or officers, now recorded, or has it ever been so recorded, on the Security Index?

52. If the answer to Interrogatory No. 51 is affirmative, list the dates and circumstances in each instance under which the name of any individual named plaintiff or plaintiff organization, its members or officers, was recorded on the Security Index.

53. If the answer to Interrogatory No. 51 is affirmative state in each instance why the name of any individual named plaintiff or plaintiff organization, was and/or is now recorded on the Security Index.

54. If the answer to Interrogatory No. 51 is affirmative, list the title, author and date of any reports, memoranda or directives authorizing, bearing upon or resulting from the recording in each instance of the name of any individual named plaintiff or plaintiff organization on the Security Index.

55. Append to your answer to these interrogatories copies of all materials whose identification is sought in Interrogatory No. 54.

58. Has the Bureau, any agent, servant, or employee, or any other person acting in concert with or at the direction or request of the Bureau engaged in any of the following activities to determine whether any of the named plaintiffs to this action should be listed on (a) the Security Index, or (b) the Agitator Index:

(i) conducted surveillance of the public and private meetings of any named plaintiff organization;

(ii) conducted surveillance of any individual named plaintiff while attending the public or private meetings of any organization;

(iii) intercepted or examined the mail addressed to or from any individual named plaintiff, or named plaintiff organization, its officers or members;

(iv) conducted wiretaps of the telephonic communications of any named plaintiff organization, its officers or members, or of any named individual plaintiff;

(v) photographed, reproduced, or otherwise copied or surveilled the bank records of any named plaintiff organization, its officers or members, or of any individual named plaintiff;

(vi) employed informants to report on the activities of any named plaintiff organization or individual named plaintiff;

(vii) or used any other means to gather information about any named individual or organizational plaintiff?

59. List the dates and state the circumstances, including but not limited to those stated, described and recorded in any of the Appendices A through K to the Complaint, of any activities described in the answer to Interrogatory No. 58. Include the names and business addresses of all persons who participated in, ordered or authorized these activities.

60. List the title, author and date of any reports, memoranda, directives or orders authorizing, bearing upon, or resulting from the activities described in the answer to Interrogatory No. 58, including but not limited to such copies of reports, memoranda, directives, and orders as appear in the Appendices to the Complaint.

61. Who are the recipients of the "reports recommending for the SI" referred to in the third paragraph of Appendix K to the Complaint?

62. What is the Bureau procedure for "disseminating reports recommending for the SI" referred to in the third paragraph of Appendix K to the Complaint?

63. List all sections and page numbers in the Manual of Instructions referred to in Appendix F to the Complaint containing procedures and operating instructions for making the recommendation and dissemination referred to in Interrogatories Nos. 61–62.

64. List the title, author and date of any reports, memoranda, directives, or orders authorizing, bearing upon, or resulting from the recommendation and dissemination referred to in Interrogatories Nos. 61–62.

65. Append to your answer to these interrogatories copies of all materials whose identification is sought in Interrogatories Nos. 63–64.

66. "In disseminating reports recommending for the SI," why is it "preferable to designate and disseminate to Secret Service immediately," as stated in the third paragraph of Appendix K to the Complaint?

67. List all sections and page numbers in the Manual of Instructions referred to in Appendix F to the Complaint containing procedures and rationales for designating and disseminating recommendations for the SI immediately to the Secret Service.

68. List the title, author and date of any reports, memoranda, directives, or orders authorizing, bearing upon, or resulting from designating and disseminating recommendations for the SI immediately to the Secret Service.

69. Append to your answer to these interrogatories copies of all materials whose identification is sought in Interrogatories Nos. 67–68.

78. List all sections and page numbers in the Manual of Instructions referred to in Appendix F to the Complaint containing procedures and operating instructions for disseminating names of persons recorded and maintained on (a) the Security Index, or (b)

the Agitator Index, as described in Interrogatories Nos. 71–76.

79. List the title, author and date of issuance of all memoranda, directives, orders, or other documents setting forth the procedures and operating instructions of the type described in Interrogatory No. 78 which are not contained in the Manual of Instructions.

80. Append to your answer to these interrogatories copies of all materials whose identification is sought in Interrogatories Nos. 77–79.

81. Has the Bureau, or its agents, servants and employees ever deleted or removed the name of any individual or organization from (a) the Security Index, or (b) the Agitator Index?

83. List all sections and page numbers in the Manual of Instructions referred to in Appendix F to the Complaint containing criteria, standards, procedures, and operating instructions for determining whether to delete or remove the name of an individual or organization from (a) the Security Index, or (b) the Agitator Index.

84. List the title, author and date of issuance of all memoranda, directives, orders, or other documents setting forth the procedures and operating instructions of the type described in Interrogatory No. 83 which are not contained in the Manual of Instructions.

85. Append to your answer to these interrogatories copies of all materials whose identification is sought in Interrogatories Nos. 83–84.

87. What standards or criteria do the Internal Security Division of the Bureau, its agents, servants and employees apply in determining whether to make a file, record, memorandum, or similar compilation of information on a person who shows no record of any felony conviction in files maintained by the Identification Division of the Bureau?

88. List all sections and page numbers in the Manual of Instructions referred to in Appendix F to the Complaint containing standards, criteria, procedures, and instructions to be fol-

lowed by agents, servants and employees of the Internal Security Division of the Bureau in making the determination described in Interrogatory No. 87.

89. List the title, author and date of issuance of all memoranda, directives, orders, or other documents setting forth the standards, criteria, procedures, and instructions of the type described in Interrogatory No. 88 which are not contained in the Manual of Instructions.

90. Append to your answer to these interrogatories copies of all materials whose identification is sought in Interrogatories Nos. 88–89.

91. If the answer to Interrogatory No. 86 is affirmative, list the names and business addresses of all governmental and nongovernmental persons, offices and agencies, including the Department of Justice, outside the Bureau to whom information on the persons described in Interrogatory No. 86 can be disseminated upon or without the request of such persons, offices or agencies.

92. If the answer to Interrogatory No. 86 is affirmative, what criteria or standards do the Bureau, its agents, servants and employees apply in determining whether to disseminate information on persons described in Interrogatory No. 86 to a governmental or nongovernmental person, office or agency, including the Department of Justice, outside the Bureau?

93. List all sections and page numbers in the Manual of Instructions referred to in Appendix F to the Complaint containing standards, criteria, procedures, and operating instructions with regard to the dissemination of information on persons described in Interrogatory No. 86.

94. List the title, author and date of issuance of all memoranda, directives, orders, or other documents setting forth the procedures and operating instructions of the type described in Interrogatory No. 93 which are not in the Manual of Instructions.

95. Append to your answer to these interrogatories copies of all materials whose identification is sought in Interrogatories Nos. 93–94.

96. Do the Bureau, its agents, servants and employees periodically delete or destroy information gathered by the Internal Security Division concerning the activities of persons described in Interrogatory No. 86?

97. If the answer to Interrogatory No. 96 is affirmative, what criteria or standards do the Bureau, its agents, servants and employees apply in determining whether to delete or destroy information on persons described in Interrogatory No. 86?

98. List all sections and page numbers in the Manual of Instructions referred to in Appendix F to the Complaint containing criteria, standards, procedures, and operating instructions for deleting and destroying information on persons described in Interrogatory No. 86.

99. List the title, author and date of issuance of all memoranda, directives, orders, or other documents setting forth the procedures and operating instructions of the type described in Interrogatory No. 98 which are not contained in the Manual of Instructions.

100. Append to your answer to these interrogatories copies of all materials whose identification is sought in Interrogatories Nos. 98–99.

101. State the number of persons on whom files, records, memoranda, reports, or similar compilations of information are made by the Internal Security Division of the Bureau and who show no record of serious felony convictions in files maintained by the Identification Division of the Bureau.

102. What standards or criteria do the Internal Security Division of the Bureau, its agents, servants and employees apply in determining whether to observe, infiltrate, surveil, or otherwise gather, receive and record information concerning political conferences, conventions, meetings, or demonstrations such as those described, observed, infiltrated, surveilled, and recorded in Appendices A

(meeting of Executive Board of Black Economic Development Conference, Philadelphia, Pennsylvania, 1/30/71), E (National Environmental Actions, Washington, D. C., 4/22/70), G (National Association of Black Students Convention, Wayne State University, Detroit, Michigan, 6/26–7/5/70), I (Conference of War Resisters International, Haverford College, Haverford, Pennsylvania, 8/25–31/69), and J (50th Anniversary of Women's International League for Peace and Freedom, Philadelphia, Pennsylvania, 10/13–17/65) ?

103. List all sections of the Constitution and titles and sections of the United States Code and regulations promulgated thereunder which authorize the Bureau to observe, infiltrate, surveil, or by other means, gather, receive and record information of the type described in Interrogatory No. 102.

104. List all sections and page numbers in the Manual of Instructions referred to in Appendix F to the Complaint containing criteria, standards, procedures, and instructions with regard to the observation, infiltration, surveillance, or other means of gathering, receiving and recording information of the type described in Interrogatory No. 102.

105. List the title, author and date of issuance of all memoranda, directives, orders, or other documents setting forth the criteria, standards, procedures, and instructions with regard to the observation, infiltration, surveillance, or other means of gathering, receiving and recording information of the type described in Interrogatory No. 102 which are not contained in the Manual of Instructions.

106. Append to your answer to these interrogatories copies of all materials whose identification is sought in Interrogatories Nos. 102–104.

107. What standards or criteria do the Internal Security Division of the Bureau, its agents, servants and employees apply in determining whether the political activities of individuals and organizations, such as those political activities described and recorded in Appendices F and H to the Complaint, warrant observation, infiltration, surveillance, or other form of gathering, receiving and recording information about such activities by the Bureau?

108. List all titles and sections of the Constitution and the United States Code and Regulations promulgated thereunder which authorize the Bureau to determine whether the political activities described and recorded in Appendices F and H to the Complaint warrant the observation, infiltration, surveillance, or other form of gathering, receiving and recording of information by the Bureau also recorded in such Appendices to the Complaint.

109. List all sections and page numbers in the Manual of Instructions referred to in Appendix F to the Complaint containing criteria, standards, procedures, and instructions with regard to determining whether the political activities described and recorded in Appendices F and H to the Complaint warrant the activities of the Bureau described in Interrogatories Nos. 107–108.

110. List the title, author and date of issuance of all memoranda, directives, orders, or other documents setting forth criteria, standards, procedures and instructions such as those described in Interrogatory No. 109 which are not contained within the Manual of Instructions.

111. Append to your answer to these interrogatories copies of all materials whose identification is sought in Interrogatories Nos. 108–110.

112. What standards or criteria do the Internal Security Division of the Bureau, its agents, servants and employees apply in determining whether the banking activities of individuals and organizations, such as those banking activities described and recorded in Appendices C and D to the Complaint, warrant surveillance or other means of gathering, receiving and recording banking information of the type recorded in Appendices C and D to the Complaint?

113. List all sections and page numbers in the Manual of Instructions referred to in Appendix F to the Complaint containing criteria, standards, procedures, and instructions with regard to determining whether the banking activities of individuals and organizations warrant surveillance or other means of gathering, receiving and recording banking information of the type recorded in Appendices C and D to the Complaint.

114. List the title, author and date of issuance of all memoranda, directives, orders, or other documents setting forth criteria, standards, procedures and instructions such as those described in Interrogatory No. 113 which are not contained within the Manual of Instructions.

115. Append to your answer to these interrogatories copies of all materials whose identification is sought in Interrogatories Nos. 113–114.

116. State whether the information concerning an unlisted telephone number contained in Appendix B to the Complaint and private bank records contained in Appendices C and D to the Complaint was collected, recorded, and filed by agents, servants and employees of the Bureau in connection with the active investigation of a specific crime.

117. What was the purpose of the Bureau, its agents, servants and employees in collecting, recording and filing the information concerning an unlisted telephone number contained in Appendix B to the Complaint and private bank records contained in Appendices C and D to the Complaint?

118. List all titles and sections of the United States Code and regulations promulgated thereunder which authorize the collection without a warrant or subpoena by the Bureau, its agents, servants and employees, of information concerning (a) a private unlisted telephone number such as described in Appendix B to the Complaint, and (b) private bank records, such as described and photographed in Appendices C and D to the Complaint.

119. State why the Bureau, its agents, servants and employees collected and recorded the information contained in Appendix A to the Complaint concerning the founders, organizational structure and private meetings of the Executive Board of the plaintiff Greater Philadelphia Black Economic Development Conference, Inc.

120. State why the Bureau, its agents, servants and employees collected and recorded the information contained in Appendix B to the Complaint concerning an unpublished telephone number provided by the Bell Telephone Company of Pennsylvania and subscribed to by plaintiff Kenyatta.

121. State why the Bureau, its agents, servants and employees collected and recorded the information contained in Appendices C and D to the Complaint concerning the bank statements of the checking account of the plaintiff National Black Economic Development Conference, Pennsylvania Office at the Southeast National Bank, 24th Street and Edgemont Avenue, Chester, Pennsylvania, and checks drawn on such account by the authorized signature of plaintiff Kenyatta.

122. State why the Bureau, its agents, servants and employees collected and recorded the information contained in Appendix E to the Complaint concerning statements and organizational efforts made by plaintiff Waldrop in preparation for and on the occasion of Earth Day, April 22, 1970, a commemorative day for the nationwide expression of "citizens' concern for environmental problems."

123. State why the Bureau, its agents, servants and employees collected and recorded the information contained in Appendix E to the Complaint concerning the associations of and a newsletter edited by plaintiff Hobbs.

124. State why the Bureau, its agents, servants and employees collected and recorded the information contained in Appendix F to the Complaint concerning the "size, aims, purposes, activities,

leadership, [and] key activists" in black student unions throughout the United States.

125. State why the Bureau, its agents, servants and employees collected and recorded the information contained in Appendix G to the Complaint concerning the proceedings at and participants in a private national convention of the plaintiff National Association of Black Students at Wayne State University, Detroit, Michigan on June 26 through July 5, 1970.

126. State why the Bureau, its agents, servants, and employees collected and recorded the information contained in Appendix H to the Complaint concerning the political, social and educational activities of plaintiff Lee while serving as President of the Student Government Association, University of Maryland, Eastern Shore Campus.

127. State why the Bureau, its agents, servants and employees collected and recorded the information contained in Appendix J to the Complaint concerning the proceedings at and participants in a private international convention of War Resisters International at Haverford, Pennsylvania on August 25 through August 29, 1969, commemorating the centennial of the birth of Mahatma Ghandi, and planned, organized and hosted by the plaintiff War Resisters League.

128. State why the Bureau, its agents, servants and employees collected and recorded the information contained in Appendix J to the Complaint including names and biographical data of nominees to and members of the National Board of plaintiff Women's International League for Peace and Freedom, United States Section.

129. In each instance list the names and business addresses of all governmental and nongovernmental persons, offices and agencies, including the Department of Justice, outside the Bureau to whom the information referred to in Interrogatories Nos. 119–128 and contained in Appendices A through J to the Complaint, concerning each of the named plaintiffs, has been disseminated upon or without the request of such persons, offices and agencies.

130. What is the meaning of the handwritten figure, "357", in the lower right hand corner of Appendix A to the Complaint?

131. State whether the two pages describing "Students for a Democratic Society" and the "Progressive Labor Party," which are appended to Appendix E to the Complaint, are prepared for general use in all files, records, memoranda, or similar compilations of information made by the Internal Security Division of the Bureau which refer in any way to "Students for a Democratic Society" or "SDS".

132. State the number of persons, not regularly employed by the Bureau, who were paid money during the calendar years 1965 through 1970 and the first nine months of calendar year 1971 by the Bureau, its agents, servants and employees, in exchange for information concerning the social and political activities of the individual named plaintiffs and plaintiff organizations, and their members and officers.

133. Append to your answer to these interrogatories copies of all editions of a newsletter entitled, "New Left Notes—Philadelphia," which were issued to Bureau personnel and other persons subsequent to "Edition # 1," a copy of which is Appendix K to the Complaint.

134. State whether the Internal Security Division of the Bureau currently maintains recorded information concerning the plaintiff Women's International League for Peace and Freedom, or its directors, officers, members, or employees.

135. State whether the Internal Security Division of the Bureau currently

maintains recorded information concerning the plaintiff National Association of Black Students, or its National Coordinators, directors, members, or employees.

136. State whether the Internal Security Division of the Bureau currently maintains recorded information concerning the plaintiff Greater Philadelphia Black Economic Development Conference, or its officers, Executive Board, members, or employees.

137. State whether the Internal Security Division of the Bureau currently maintains recorded information concerning the plaintiff War Resisters League, or its officers, directors, members, or employees.

138. State whether the Internal Security Division of the Bureau currently maintains recorded information concerning plaintiff Waldrop.

139. State whether the Internal Security Division of the Bureau currently maintains recorded information concerning plaintiff Hobbs.

140. State whether the Internal Security Division of the Bureau currently maintains recorded information concerning plaintiff Kenyatta.

141. State whether the Internal Security Division of the Bureau currently maintains recorded information concerning plaintiff Lee.

142. State whether the Internal Security Division of the Bureau currently maintains recorded information concerning the plaintiff National Black Economic Development Conference, Pennsylvania Office, or its officers, members or employees.

143. If the answer to any of Interrogatories Nos. 134–142 is affirmative, append to your answer to these interrogatories copies of all such recorded information referred to in Interrogatories Nos. 134–142.