**Joann FRANKENHAUSER et al.**

v.

**Frank L. RIZZO et al.**

**Civ. A. No. 71–981.**

United States District Court,
E. D. Pennsylvania.

March 13, 1973.

Edwin D. Wolf, Philadelphia, Pa., for plaintiffs.

Beryl E. Hoffman, Philadelphia, Pa., for defendants.

OPINION AND ORDER

EDWARD R. BECKER, District Judge.

This is a civil rights case in which plaintiffs have sued to recover damages for the death of their husband and father, Paul Frankenhauser, who was shot and killed by police in a dyeworks in the Kensington section of Philadelphia on

the afternoon of September 1, 1970.[1] Named as defendants are the police officers who allegedly fired the fatal shots and their superiors in command. The complaint alleges that decedent and his brother, Joseph, who was with him, were unarmed, that neither decedent nor his brother had threatened the police during the course of the encounter and chase that resulted in the shooting, and that there was no provocation or justifiable cause for the police action.[1a] In their answers, the defendants have asserted that one of the Frankenhauser brothers was armed, that the police had heard shots and thus had reasonable cause to believe that one of the brothers was armed, that the Frankenhausers acted in such fashion that the policemen involved believed that they were in danger of being seriously injured, that the officers acted in a reasonable manner, and that the shooting was justified. Before us is a discovery motion which raises principally the question whether plaintiffs have the right to inspect and copy witnesses' statements to police and the reports of the police investigations made in the aftermath of the episode, or whether these reports and statements are properly the subject of an executive privilege.

The police department investigation which followed the shooting was apparently extensive. Many statements and photographs were taken, all of the physical evidence was analyzed, and an autopsy was performed on decedent. The defendants, represented by the City Solicitor of Philadelphia, have now agreed to make available to plaintiffs their radio tapes of the incident, physical evidence regarding the killing, physical evidence taken from the home of the decedent following his death, the autopsy report on decedent, photographs of the scene of the killing, a list of all known witnesses to the killing, and a list of previous or subsequent events involving Paul and Joseph Frankenhauser and decedent's wife, who is a plaintiff in the action.[2] However, defendants have refused to

---

1. Jurisdiction is conferred by 28 U.S.C. § 1343(3).

1a. More specifically, the complaint alleges the following. On the afternoon of September 1, 1970, Paul Frankenhauser was driving an automobile in which his brother Joseph was a passenger. They passed a police vehicle containing police officers Bresnahan and Metzger (both defendants) who knew them and who also knew that Paul did not possess a valid Pennsylvania operator's license. After the vehicles passed each other, Paul accelerated his car and then failed to stop at a red light, whereupon the officers gave chase and radioed for help. After several blocks the Frankenhausers encountered an obstruction in the road, abandoned their car and went on foot. Bresnahan and Metzger followed. At a point on Martha Street near Amber Street, the Frankenhausers ran along an embankment supporting the Penn Central tracks to a point where they scaled the embankment. They then proceeded along a catwalk attached to the tracks to a point over the property of the Brehme and Steel Dyeworks near Trenton and Allegheny Avenues, where they dropped from the cat-

walk into the dyeworks yard and secreted themselves in different places on the property. By this time a substantial number of police had arrived at the scene, including the highway patrol, police stakeout unit, police canine corps and others. In addition to numerous police cars, a police helicopter was at the scene and the commissioner of police arrived and took personal command of the operation of police personnel. The complaint alleges that Paul Frankenhauser was shot by defendants Metzger and Edward Bastian, the latter a member of the police stakeout unit, acting on orders of then Commissioner (now Mayor) Rizzo. Plaintiffs allege that the Frankenhausers were unarmed, that no weapon of any sort was in the Frankenhauser car and that no weapon was ever found at the scene of the ultimate shooting. They further allege that no threatening posture was shown by either of the Frankenhausers during the chase, and that Paul Frankenhauser at no time gave anyone present in the dyeworks yard cause to fear danger from him.

2. In view of the agreement of counsel, no formal discovery order has been made with respect to such items.

accede to plaintiffs' requests for discovery of the following:

(1) reports of the analysis of physical evidence made by the police department;

(2) the results of polygraph examinations conducted by the police;

(3) statements, signed or unsigned, from police or civilian witnesses to the killing;

(4) police investigation reports relating to the killing;

(5) police reports of previous incidents involving Paul or Joseph Frankenhauser; and

(6) written communications, reports, references to, or accounts of all communications among members of the police department or between members of the police department and any other person or law enforcement agency regarding Paul or Joseph Frankenhauser.

Plaintiffs assert that the discovery which they seek is essential to the preparation of their case for trial, and that the requests that they have made fall squarely within the scope of the discovery rules:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . .. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

F.R.Civ.P. 26(b)(1). Defendants, on the other hand, have interposed a variety of objections to the discovery. In addition to the claim of executive privilege, they have invoked the attorney-client privilege and the work-product rule and have asserted that the polygraph examinations are not relevant or admissible and are not calculated to lead to discovery of admissible evidence.

We agree with the defendants' position as to the polygraph material and will deny discovery with respect to it.[3] And, we deem the attorney-client privilege[4] and work-product[5] objections

---

3. The admissibility of polygraph examinations at trial has been the subject of a number of recent opinions. *See* United States v. Zeiger, 350 F.Supp. 685 (D.D.C. Oct. 10, 1972) (defendant allowed to introduce police polygraph results), rev'd mem., 12 Crim.L.Rep. 2135 (D.C.Cir. Nov. 9, 1972); United States v. Ridling, 350 F.Supp. 90 (E.D.Mich. Oct. 6, 1972) (defendant allowed to introduce polygraph evidence in perjury case); People v. Cutter, 12 Crim.L.Rep. 2133 (Cal. Super.Ct. Nov. 6, 1972) (allowing use by defendant in suppression hearing to prove lack of consent to warrantless search); Skinner v. Commonwealth, 212 Va. 260, 183 S.E.2d 725 (Va. Oct. 11, 1971) (introduction by defendant not allowed). No record on the reliability of polygraph examinations has been developed in this proceeding. For the present at least, we are inclined to agree with those courts holding that the results of polygraph tests are inadmissible in a judicial proceeding. Moreover, whatever view one takes on the admissibility of polygraph examinations, at this point we fail to perceive how dis-

closure of the results of the polygraph tests would lead to the discovery of other admissible evidence, which is the general test for scope of discovery under rule 26 (b)(1). We note that plaintiffs have not undertaken to show the Court just whose polygraph examinations are involved, what the examination results would tend to show, or how those results would lead to the discovery of other admissible evidence, if any. Our denial of their motion to discover polygraph results is without prejudice, however, to plaintiffs' right to renew their polygraph discovery motion should they, in the future, feel that they can show the Court why they are entitled to such discovery.

4. Under the Philadelphia Home Rule Charter, the police department is represented by the City Solicitor's Office (law department). Defendants contend that this is an ongoing representation, that the law department relies on the police to investigate all shooting cases rather than have solicitor investigators do the same

5. See Note 5 on page 342.

to be palpably inapplicable. Accordingly, we turn to the executive privilege claim.

Executive privilege is the government's privilege to prevent disclosure of certain information whose disclosure would be contrary to the public interest.[6] The defendants argue that police investigations such as the one here involved are made under a veil of confidentiality and that it would contravene the public interest and would impair the functioning of the police department if the results of such investigations were disclosed. They contend that destruction of the confidentiality of police investigative records would have a "chilling effect" upon the department and would impede candid and conscientious self-evaluation of actions of the department. Defendants further assert that parties to police operations would become reluctant to talk, that witnesses would hesitate to come forward, and that law enforcement officials' actions would be guided less by the call of duty than by a continual fear of lawsuits arising out of their official conduct.

As their principal example, defendants cite Brown v. Thompson, 430 F.2d 1214 (5th Cir. 1970). Brown was a civil rights action against officers of the Mississippi Highway Patrol and their superiors arising out of the shooting of a demonstrator during a confrontation with law enforcement officers. The court found no abuse of discretion in the district judge's denial, on the grounds of privilege, of discovery of police and highway patrol records and files which concerned a continuing homicide investigation. However, the court concluded that a balancing of conflicting interests is the proper method of resolving such an issue, and thus Brown does not mandate a blanket grant of privilege, but rather a case-by-case approach. Under such an approach, Brown does not support the defendants' contention for the facts in Brown are distinguishable from

---

because of the police experience in such matters, but that the method of police investigation has been developed over the years with guidance of the law department. Defendants further contend that in any particular case the police can call upon the law department for advice and counseling and that "the investigative staff of the police department also knows that these reports are used and reviewed by the law department when necessary."

The facts here do not support the privilege claim. The investigative reports are not a part of a consultation process between lawyer and client, or among representatives of the client designed to facilitate the rendition of legal services to the client. See Federal Rules of Evidence, rule 503. Nor were they requested by a lawyer to evaluate a client's legal situation, cf. Hasso v. Retail Credit Company, 58 F.R.D. 425 (E.D.Pa.1973).

5. The strict work-product exemption from discovery recognized in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), was sharply curtailed by the 1970 revision of the discovery rules, see F.R.Civ.P. 26(b)(3). Within the parameters of that rule, it appears that the plaintiffs have shown "substantial need"

for the statements. See United States v. Murphy Cook & Co., 52 F.R.D. 363 (E.D. Pa.1971); Southern Ry. v. Lanham, 403 F.2d 119 (5th Cir. 1968). Cf. Fidelity & Deposit Co. v. S. Stefan Strauss, Inc., 52 F.R.D. 536 (E.D.Pa.1971). In any event, the investigation made by the police was undertaken not in anticipation of litigation but rather as a routine procedure.

6. See Federal Rules of Evidence, rule 509; 8 J. Wigmore, Evidence § 2378(3) (McNaughton rev. 1961).

Plaintiffs have cited to us Carter v. Carlson, 56 F.R.D. 9 (D.D.C.1972), which ordered discovery because, inter alia, the privilege was invoked by counsel for the police rather than by the police chief or mayor. We will follow instead the procedure prescribed by rule 509(c), Federal Rules of Evidence, which allows counsel for the government to assert the privilege for official information. The rule requires that executive officials invoke the privilege only where military or diplomatic secrets are concerned, because there the judge's participation in delving into the privilege question is less full than in cases involving less sensitive official information.

the facts before us where no ongoing investigation is involved.

A similar approach was followed by Judge VanArtsdalen in Coalition for Adequate Urban Planning v. City of Philadelphia, Civil No. 72–1912 (E.D.Pa. Feb. 20, 1973):

> Such a privilege is not absolute; it must be demonstrated on a case by case basis. *See* United States v. Reynolds, 345 U.S. 1, 8 [73 S.Ct. 528, 97 L.Ed. 727] (1953). The court is called on to perform a balancing function—the interest of the government in ensuring the secrecy of the documents in question as opposed to the need of the private party to obtain discovery. The relative degree of the conflicting necessities will determine how each case is decided.

In that case discovery was sought of memoranda explaining the reasons underlying a HUD recertification decision. The documents sought included a variety of preliminary opinions, suggestions, recommendations, and interpretations of program requirements, prepared as part of the decision-making process, but not data or other raw factual material or final expressions of HUD policy. Judge Van Artsdalen refused to order disclosure.

Plaintiffs rely principally on Wood v. Breier, 54 F.R.D. 7 (E.D.Wisc.1972), a civil rights action alleging various forms of police misconduct in connection with the plaintiff's arrest during a demonstration. Plaintiff sought discovery of a police investigation file on the incident. Chief Judge Reynolds inspected the file *in camera* and found that it consisted almost entirely of firsthand reports by police officers or police investigators' summaries of interviews with policemen. The remainder of the file consisted of letters pertinent to the investigation, newspaper articles, flyers, and two factual summaries of the interviews. The file contained only factual material and no discussion or recommen-

dations for future action or evaluations of past actions.

Judge Reynolds permitted the discovery. He found that the argument for confidentiality was outweighed by two policies favoring disclosure. First was "the broad federal mandate for discovery in all civil actions," that is, the federal policy of liberal pretrial discovery as a basic principle of the modern federal procedural scheme. The second reason inheres in the civil rights laws themselves:

> [I]t is the manner of enforcement which gives § 1983 its unique importance, for enforcement is placed in the hands of the people. Each citizen "acts as a private attorney general who 'takes on the mantel of the sovereign,'" guarding for all of us the individual liberties enunciated in the Constitution. Section 1983 represents a balancing feature in our governmental structure whereby individual citizens are encouraged to police those who are charged with policing us all. Thus, it is of special import that suits brought under this statute be resolved by a determination of the truth rather than by a determination that the truth shall remain hidden.

54 F.R.D. at 10–11 (footnotes omitted).

While agreeing that the executive privilege is an important one, Judge Reynolds noted that the government's assertion of the privilege is not automatically binding on the court, and followed the lead of the cases we have cited calling for a balancing process. He noted, with extensive citation, that the great majority of cases that have considered the discoverability of law enforcement investigations have held that in general such discovery should be barred in ongoing investigations, but should be permitted when investigation and prosecution have been completed, and he also noted that in some instances, under the balancing test, discovery might be justified despite the ongoing nature of the

investigation.[7] Judge Reynolds wrote that the privilege protects intragovernmental advisory opinions and recommendations relating to policy-making, but not simple factual reports and summaries, which was what was involved in that case. He concluded by rejecting the argument that disclosure would have a chilling effect on the ability of police administrators to obtain full and candid reporting from their officers.

■■ We agree with the principles enunciated in the cases cited to us by both parties.[8] The teaching of those cases is that when executive privilege is asserted, the court must balance the public interest in the confidentiality of governmental information against the needs of a litigant to obtain data, not otherwise available to him, with which to pursue a non-frivolous cause of action.[9] Needless to say, the balancing task will often be difficult and the ingredients of the test will vary from case to case. In the context of discovery of police investigation files in a civil rights case, however, at least the following considerations should be examined: (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evalua-

tion and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case. We turn to application of these criteria to the motion before us.

First, we do not believe that rare instances of disclosure pursuant to a court order made after application of a balancing test comprising detailed standards such as those enumerated here would deter citizens from revealing information to the police. Neither do we perceive any impact of the disclosure of factual statements surrounding an investigation of a shooting upon persons who gave them. Police officers are of course willing to cooperate, and we believe that the average citizen is also willing to cooperate with law enforcement officials. Dis-

---

7. 54 F.R.D. at 11–12 & nn. 17–19. Judge Reynolds further noted that a conditional executive privilege must give way where there is a need for discovery to preclude prejudice and unfairness.

8. Defendants also cite Kott v. Perini, 283 F.Supp. 1 (N.D.Ohio 1968), where police investigative records were held confidential and privileged in a habeas corpus action. That decision recognizes an absolute privilege for police records, specifically rejecting a case-by-case balancing approach on the ground that allowing disclosure of such records in *any* case "would have a certain and chilling effect upon the internal use of such record making." Such a holding appears inconsistent with the approach adopted in the Federal

Rules of Evidence, *see* Advisory Committee's Note to rule 509(b) and by Wigmore, *see* 8 J. Wigmore, *supra*, at 805. And the Supreme Court expressly disapproved blanket acceptance of executive claims of privilege in United States v. Reynolds, 345 U.S. 1, 9–10, 73 S.Ct. 528, 533, 97 L.Ed. 727 (1953), remarking that "Judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers." We therefore decline to follow *Kott*.

9. Wigmore, *supra*, at 807, declares that the litigant's need for the information is not relevant to the decision on the privilege claim, but in United States v. Reynolds, *supra*, the Supreme Court held otherwise.

closure under the circumstances of this case would not reveal any details of police self-evaluation, because we will limit disclosure to factual data, as opposed to evaluative summaries and recommendations. Furthermore, over two years have elapsed since the completion of the investigation, and no criminal charges have been brought against anyone; it is unrealistic to believe that any will be brought, notwithstanding the fact that there is no statute of limitations on homicide. Neither does it appear that any intradepartmental disciplinary actions have been instituted as the result of the events in question, and it is equally unrealistic to believe that any will be at this late date. Furthermore, no party seeking discovery is actually or potentially a defendant in any criminal case arising out of the incidents in question.

While we intimate no view whatever as to the merits of plaintiffs' cause of action, a reading of the complaint reveals that its allegations are substantial and that it was apparently brought in good faith. Plaintiffs' need for the facts contained in the police investigative files is manifest. The police investigation was conducted promptly after the incident occurred and certainly should be comprehensive and reliable. Most of the eyewitnesses to the shooting were police officers, and the widow and children had no means to duplicate the police investigation. Interviews or depositions at this late date could not do so. As was noted by Judge Ditter in United States v. Murphy Cook & Co., 52 F.R.D. 363, 365 (1971):

> There is no doubt that production of a statement should be ordered if a witness has a faulty memory and can no longer relate details of the event.

. . . The mere lapse of time is in itself enough to justify production of material otherwise protected as work product. . . . The notion that memory fades with the passage of time needs no demonstration.

> The statement of a witness taken immediately after the accident is a catalyst of unique value in the development of the truth through the judicial process. It should be available to both parties no matter which one obtained it. . . .

*Accord,* Southern Ry. v. Lanham, 403 F. 2d 119 (5th Cir. 1968). The discovery sought is not only of extreme importance to plaintiffs' case; it may indeed be the sole repository of their prospects of success. *See* Wood v. Breier, *supra.*

■ The foregoing application of the balancing test makes it clear that plaintiffs are entitled to discovery of the signed statements of witnesses and those portions of the police reports containing factual data. No harm to the public interest can flow from such discovery. The same reasoning applies to the analysis of physical evidence made by the police department. Indeed, plaintiffs might be entitled to such information even in a criminal case. *See* F.R.Crim. P. 16. Notwithstanding the foregoing, we shall not require disclosure of the evaluative summary portion of the police investigative reports and will order those portions excised before delivery to plaintiffs.[10]

In support of these conclusions, we note that in Bradley v. City of Philadelphia, Civ. No. 69–1096 (E.D.Pa.) (unreported), Judge VanArtsdalen permitted inspection of police investigative reports by civil rights plaintiffs. Moreover, in Philadelphia Resistance v. Mitchell, 58 F.R.D. 139 (E.D.Pa.1972), Judge Van-

10. In a supplemental memorandum, plaintiffs have requested the opportunity to review evaluations bearing on defendant Rizzo's failure to proceed against the police officers responsible. Plaintiffs sub- mit that this material "is not opinion evidence with regard to that issue but constitutes facts on which the allegations are based." We perceive no issue in the case to which this request is relevant.

Artsdalen held plaintiffs in a civil rights action entitled to certain FBI investigatory information which he found would not jeopardize the government's ongoing criminal investigation. *See also Bradley v. City of Philadelphia, supra*; Environmental Protection Agency v. Mink, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed. 2d 119 (1973), which notes that the "flexible, common sense approach that has long governed private parties' discovery" of government memoranda in litigation with government agencies "extended and continues to extend to the discovery of purely factual material appearing in those documents in a form that is severable without compromising the private remainder of the documents."

The final question in the case involves the request for "police reports of previous incidents involving Paul or Joseph Frankenhauser and written communications, reports, references to or accounts of all communications among members of the police department or between members of the police department and any other person or law enforcement agency regarding Paul or Joseph Frankenhauser." According to representations made by plaintiffs' counsel at oral argument, this data is material to the issue of whether the police had probable cause to believe that the Frankenhauser brothers were armed, dangerous, engaging in violations of the law, etc. While the request is reasonable under the circumstances, because of its unusual nature and our inability to foresee just what type of data is involved, we will inspect the sought material *in camera* prior to ruling on the discovery motion. We will apply the standards articulated in this opinion and will take special note of whether the reports consist of factual data or evaluation and opinion.

In accordance with the foregoing opinion, we enter the following Order.

And now, this 13th day of March 1973, it is ordered that:

1. Defendants shall produce to the plaintiffs for inspection and copying the following materials from the files containing the police investigation of the incident described in plaintiff's complaint:

(a) reports of the analysis of physical evidence made by the police department;

(b) statements, signed or unsigned, by police or civilian witnesses to the killing and the events leading up to the killing;

(c) police investigation reports relating to the killing and the events leading up to the killing, except for such portions of those reports as constitute opinion and evaluative summary.

2. Plaintiffs' motion to compel discovery of polygraph examination reports is denied as beyond the proper scope of discovery.

3. Copies of police reports of previous incidents involving Paul or Joseph Frankenhauser, and written communications among members of the police department or between members of the police department and any other person or law enforcement agency regarding Paul or Joseph Frankenhauser, shall be furnished by defendants to the Court for *in camera* inspection within twenty days, whereupon the Court shall in due course rule upon the amenability of the matters thus furnished to discovery in accordance with the standards enunciated in this Opinion.