Greg **BARNETTE** and Mike
Mosko, **Plaintiffs,**

v.

Emory **FOLMAR, et al., Defendants.**

Civ. A. Nos. 90–D–959–N, 91–D–168–N.

United States District Court,
M.D. Alabama, N.D.

Oct. 18, 1993.

S. Greg Burge, Heninger, Burge & Vargo, Birmingham, AL, for plaintiffs.

J. Bernard Brannan, Jr., Andy D. Birchfield, Jr., Montgomery, AL, for defendants.

## ORDER

DE MENT, District Judge.

This matter is now before the court on the United States' objection to the magistrate's order issued March 18, 1993. The plaintiffs[1] filed a response to the objections on June 17, 1993. For the reasons set forth below, the United States' objection is due to be OVERRULED.

The United States objects specifically to the magistrate's finding that the government has waived its right to object to the release of certain FBI documents based on the provisions of 28 C.F.R. § 16.21 *et seq.* On nondispositive issues, the court "may reconsider any pretrial matter ... where it has been shown that the magistrate's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). Thus, in this case, the burden is on the government to show that the magistrate's order is either "clearly erroneous or contrary to law." The government has failed to meet its burden.

The magistrate's opinion and order discusses completely the prior history of this case which relate back to events that began as early as August 1991. The magistrate reviewed the prior hearings and the government's participation at this hearings thoroughly. The magistrate made specific findings that the government had notice as early as July 1992, that the FBI documents would be subject to disclosure as soon as the ongoing investigation was complete and yet the government failed to raise 28 C.F.R. § 16.21 *et seq.* until March 3, 1993. (Magistrate's Opinion at 13). Considering the prior procedural history of this case, clearly, the magistrate is in a better position to determine whether the government has waived its right to object under 28 C.F.R. § 16.21 *et seq.*[1] The court has read thoroughly the government's brief in support of its objection but can find no facts that would demonstrate that

---

1. Judge Carroll conducted at least two hearings in which the government had ample opportunity to raise 28 C.F.R. § 16.21 *et seq.* Yet, "the government stood silent." (Magistrate's Opinion at 12).

the magistrate's order was "clearly erroneous or contrary to law."

Therefore, it is CONSIDERED and ORDERED that the United States' objection to the magistrate's order of March 18, 1993, be and the same is hereby OVERRULED.

### ORDER

CARROLL, United States Magistrate Judge.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

These consolidated actions were filed by former members of the Narcotics Unit of the Montgomery Police Department who were terminated following a "sting operation" involving that unit. In their complaint, they raise a series of claims about the wrongfulness of their termination. In August 1991, the defendants, who are the mayor, chief of police, and other police officials, served a subpoena on Ned Hersman, an investigator for the Alabama Attorney General's Office, attempting to obtain records relating to an investigation which the Alabama Attorney General's Office and the Office of Public Integrity of the United States Department of Justice was conducting into alleged wrongdoing by the Narcotics Unit. Hersman was an active participant in the investigation along with federal agents. The subpoena specifically sought:

> All records of the Montgomery Police Department Narcotics Unit. Any and all tape recordings, records, files, notes, papers, photographs, log books and other materials within the possession or under the control of the witness relating to any investigation concerning Greg Barnette, Mike Mosko, Jerome Wooten and/or Frank Berteralli and statements of any witnesses taken in connection with any investigation into the activities of the Montgomery Police Department Narcotics Unit.

On August 26, 1991, the United States filed a motion to quash the subpoena. In arguing that the subpoena to Hersman ought to be quashed, the government stated:

> 3. The United States believes that by complying with the instant subpoena, Ned Hersman would reveal investigative records compiled for law enforcement purposes, disclose investigative techniques and interfere with enforcement proceedings, the effectiveness of which would be impaired.
>
> 4. The United States requests that this Honorable Court quash the subpoena to Ned Hersman presently issued to allow a reasonable time for the criminal investigation to be completed.

The state of Alabama filed a similar response. The court, without objection, construed the responses to raise a law enforcement investigatory privilege. There was no issue raised by the parties about the government's standing to object to a subpoena issued to a state law enforcement officer. On September 11, 1991, this court issued an order granting the motions to quash but requiring the government to file a report on or before December 6, 1991 informing the court as to the status of the ongoing criminal investigation. All proceedings in the case were then stayed.

On March 16, 1992, the defendants filed a motion to allow issuance of a subpoena, again asking that Hersman be available for deposition and the production of documents. The government objected to the issuance of a subpoena stating:

> 1. The United States does not object to the production of records that were taken from the Montgomery Police Department Narcotics Unit. Since the investigation is/may be continuing, the records cannot be returned to the Narcotics Unit. However, the United States has no objection to providing those records to be inspected and copied.
>
> 2. The United States continues to object to the production of all other material requested by the defendants. Since only Greg Barnette and Mike Mosko are plaintiffs in this action, the United States objects to the part of the subpoena requesting information relating to Jerome Wooten and/or Frank Berteralli.
>
> 3. The United States also continues to object to the production of statements of any witness taken in connection with any

investigation into the activities of the Montgomery Police Department Narcotics Unit. This part of the subpoena is far too broad to be relevant to the subject matter involved in the pending action as provided by Rule 26(b)(1), Federal Rules of Civil Procedure. In addition, some of these statements were obtained through the Federal Grand Jury and should be disclosed only pursuant to Rule 6(e), Federal Rules of Criminal Procedure. Finally many of these statements were given in confidence and should these statements be disclosed, the witnesses would face only certain retribution.

The government also requested that the "discovery granted should be limited to the so-called 'sting' operation which is alleged to have led to the resignation of plaintiffs Barnette and Mosko." The state of Alabama specifically adopted the government's response.

The government, though objecting on limited grounds to the production of documents in its possession, nonetheless, indicated its willingness to cooperate with the court in resolving these difficult issues relating to disclosure. It informed the court in its pleading, "The United States will make F.B.I. Agent Robert Thetford available to the Magistrate Judge for *in camera* examination if necessary for him to determine what evidence is relevant." To the court, this action signalled a sincere effort on the part of the government to resolve the problematic issues presented by this case in a fair and efficient manner. Following a hearing held on April 21, 1992, the court ordered Hersman and Thetford to appear for an *in camera* hearing. They were ordered to bring and did bring all documents and material which related to the plaintiffs. During the hearing, the court reviewed the documents and took testimony from the agents.[1]

On June 1, 1992, this court issued an order directing the state of Alabama and the government to produce certain documents. It

also identified certain documents from the FBI files which were relevant and set a further hearing. The purpose of the hearing as made clear in the order was "to determine whether the portions of the FBI files on Mosko and Barnette described above shall be produced." The government did not object to the order or to the fact that the court was holding a hearing which could result in the release of information from FBI files.

The court held the hearing on June 10, 1992. Special Agent Thetford testified *in camera* about the reasons why disclosure of the information which had been previously referenced would harm the investigation.[2] In an order issued July 30, 1992, the court found that release of information from the FBI's file would compromise the on-going investigation into misconduct in the narcotics unit. The court also ordered Special Agent Thetford to file monthly status reports.

On March 3, 1993, the court held yet another hearing to determine whether information from FBI files should be released.

## II. DISCUSSION

### A. THE SPECIFIC OBJECTIONS OF THE UNITED STATES AND THE STATE OF ALABAMA TO DISCLOSURE

In responses filed August 26, 1991 and March 30, 1992, the United States and the state of Alabama raised three specific objections to disclosure of information from the FBI files:

(1) that the materials requested are subject to a law enforcement privilege;[3]

(2) that the subpoena is overbroad in that it seeks irrelevant material;[4] and

(3) that some of the statements were obtained through a Federal Grand Jury and, thus, may be disclosed only pursuant to Rule 6(e) of the Federal Rules of Criminal Procedure.

---

1. The documents which are relevant to this proceeding are Court's Exhibits 1 and 2 which are under seal.

2. Agent Thetford's testimony was tape recorded and placed under seal.

3. Response of August 26, 1991, paragraphs 2, 3 and 4; Response of March 30, 1992.

4. Response of March 30, 1992 at paragraph 3.

### 1. The Investigatory Privilege

As this court noted in one of its previous orders, the investigatory privilege applies to the materials which the defendants seek. However, the investigatory privilege is a qualified privilege. The public interest in non-disclosure must be balanced against the need of a particular litigant for access to the privileged information. *Black v. Sheraton Corp. of America,* 564 F.2d 531, 545 (D.C.Cir. 1977). In striking that balance, the court should look to such factors as:

(1) The extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information;

(2) The impact upon the persons who have given information of having their identities disclosed;

(3) The degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure;

(4) Whether the information sought is factual data or evaluative summary;

(5) Whether the party seeking the discovery is an actual potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question;

(6) Whether the police investigation has been completed;

(7) Whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation;

(8) Whether the plaintiffs' suit is non-frivolous and brought in good faith;

(9) Whether the information sought is available through other discovery or from other sources; and

(10) The importance of the information sought to the plaintiffs' or defendants' case.

*Frankenhauser v. Rizzo,* 59 F.R.D. 339, 344 (E.D.Pa.1973).

This case is currently pending before the court on a motion filed by the defendants to subpoena certain records from Ned Hersman and to depose him. As far as the court knows, the only information which Hersman can provide that he has not already provided in response to a previous order would come from information which was furnished him by the FBI or which he learned while participating in interviews jointly conducted with the FBI. The information which Mr. Hersman has relating to these plaintiffs is, therefore, not extensive. The only information in the FBI files which relate to the plaintiffs consists of portions of interviews of five individuals which the FBI conducted either alone or with Mr. Hersman. Four of these individuals were, at the time of the interview, members of the Montgomery Police Department.

The court concludes, based on its review of all the matters presented in this case including the reports filed by the FBI about its investigation, that disclosure of information which Mr. Hersman possesses will not deter citizens from providing information in this case. Indeed, as noted above, most of the information which is likely to be disclosed was provided by law enforcement officers. There is some limited potentially negative impact on the persons who have given information in having their names disclosed. However, that potential impact is outweighed by the importance of the information to the parties. None of the other factors referenced above militate against disclosure. The information which the court finds is likely to be disclosed by Hersman is information relating solely to Mosko and Barnette who are the plaintiffs in this case and information relating to this case itself. None of the information concerning those individuals is relevant to the ongoing investigation of other subjects. None of the disclosure which the court contemplates will affect that investigation.

The court also believes that disclosure is necessary at this time. The information relating to Mosko and Barnette which the court concludes is likely to be disclosed by Hersman or by furnishing the FBI reports themselves is not available to the parties from other sources. The only sources are Hersman and the FBI agents and their reports. The state's investigation has been underway since December 1989. The federal investigation commenced in November 1990. As a result of those investigations, this lawsuit has been delayed for some 15 months. Further

delay based on the pendency of an investigation into the narcotics unit is no longer necessary or permissible. The need of the litigants for the information which is protected from disclosure now clearly outweighs the need to keep the information privileged.

### 2. Relevancy

The government's relevancy objection is well-taken. The court concludes that the defendants are entitled only to documents and information which relate to the plaintiffs in this case or to this litigation.

### 3. The Grand Jury Objection

The government has made no showing that any of the information about the plaintiffs in this case or the case itself has ever been the subject of testimony before a Federal Grand Jury. Consequently, the provision of Rule 6(e) of the Federal Rule of Criminal Procedure do not apply.

## B. THE GOVERNMENT'S NEW OBJECTION

■ On March 3, 1993, the court convened to revisit the issue of whether there should be disclosure of information contained in the FBI reports by release of portions of the reports themselves. Although no subpoena had been issued for such information directed to the FBI, the government had never raised an objection on that ground. Indeed, the FBI has cooperated with the court and the litigants in resolving all disclosure issues even though technically disclosure had not been directly requested from the FBI. It has appeared to the court throughout the pendency of this litigation, based on the government's cooperation and assistance, that the FBI would provide the information about the plaintiffs to the parties without a subpoena as soon as the court concluded that such a course of action was necessary. When informed on March 3 that the court was contemplating releasing certain portions of the FBI files to counsel for the parties, however, the government objected on the grounds that the Justice Department had not approved the release of documents as required by 28 C.F.R. § 16.21 *et seq.* The factual premise of the government's objection is correct. The Justice Department has apparently not authorized the release of the documents. Unfortunately for the government, they have waived that objection.

The government first had notice that documents in the possession of the FBI might be the subject of court ordered disclosure in August 1991 when the defendants filed a subpoena directed at Ned Hersman. Although the subpoena request was not directed at a government agent, the government opposed disclosure on several grounds. It did not argue at that time that this court could not order disclosure because there had been no compliance with the provision of 28 C.F.R. § 16.21 *et seq.*

The first time that the government mentioned 28 C.F.R. was during a hearing which this court held on April 21, 1992. At that time the government offered to provide Special Agent Robert Thetford for an *in camera* examination. The Assistant United States Attorney, on the record of the hearing, stated his belief that the *in camera* inspection was the best way to resolve the disclosure controversy. He asked the court to go item by item through the records and determine whether any privilege applied and whether there was any federal protection "under C.F.R. 28." He mentioned no specific C.F.R. section.

The court undertook the *in camera* inspection examination suggested the government on May 1, 1992. Following the hearing, the court issued an order which specifically directed the United States through the FBI to provide the parties with a series of documents in the possession of the FBI which they had obtained from the Montgomery Police Department. The court also identified specific portions of the FBI reports on the plaintiffs in this case which the court found to be "potentially relevant and discoverable." The government filed no objection to the order even though the court ordered that documents in possession of the FBI which were obtained from the Montgomery Police Department be produced and even though the court found that other portions of the FBI files could be subject to an order requiring their production. The court then scheduled another hearing to hear argument on the question of whether the FBI files them-

selves which it referenced in its order should be produced.

On July 28, 1992, the court issued another order, upholding the government's assertion of a law enforcement investigatory privilege. In this order, the court specifically stated, "The court will order the production of records as soon as the investigation is complete. If the investigation is not completed by January 1, 1993, the court will conduct a further hearing to determine the status of the case. The government should be aware that, however, the court considers any delay beyond January 1, 1993 to be presumptively prejudicial." Despite the clear message in the order that the court would order the release FBI documents, the government filed no objections and gave no indication that it would invoke the provisions of 28 C.F.R. § 16.21 to block release when the court ultimately ordered release of the FBI documents. Had the government framed such an objection or given any indication of its intent, the court would have resolved the issue at that time. Instead, the government stood silent. It now asks the court to overlook that silence and refuse to allow parties access to relevant documents because the Justice Department has not approved their release.

Under the provisions of 28 C.F.R. § 16.22:
... no employee or former employee of the Department of Justice shall, in response to a demand shall produce any material contained in the files of the Department, or disclose any information relating to or based upon material contained in the files of the department, or disclose any information or produce any material acquired as part of the performance of that person's official duties or because of that person's official status without prior approval of the proper Department official in accordance with §§ 16.24 and 16.25 of this part.

Sections 16.24 and 16.25 set out the elaborate intradepartmental procedure which must be followed before disclosure is autho-

rized. In the event a court orders disclosure of documents from the files of the FBI before the bureaucratic process is complete, § 16.27 mandates that:

... the responsible official or other Department attorney designated for the purpose shall appear and furnish the court with other authority that the demand has been or is being, as the case may be, referred for the prompt consideration of the appropriate Department official and shall respectfully request the court or authority to stay the demand pending receipt of the requested instructions.

If the court refuses to stay the proceedings, the person upon whom the demand has been made is directed to respectfully decline the request. 28 C.F.R. § 16.28. In this case, the government has known, at least since July 1992, that the court was going to order the release of specific documents from the FBI files. It has nonetheless failed to follow the requirements of applicable regulations.

There is no doubt that Special Agent Thetford could, under certain circumstances, refuse to produce the documents which are at issue in this case and hide behind the provision of 28 C.F.R. 16.21 *et seq.* In this case, Special Agent Thetford has lost that right because of the government's inaction. The government has failed to raise the issue in any pleadings filed in this court. No "Responsible official or other Department attorney designated for the purpose" has ever appeared in this court to oppose production. More importantly, as noted above, the government has produced, in response to this court's order of June 1, 1992, groups of materials which they are forbidden by § 16.22 from disclosing.[5] In addition, in another case, *United States v. John Thomas Riley,* CR 89–198–N and CR 89–216–N (M.D.Ala.), the government provided material in response to requests from the defendant's attorney from the investigation which is the subject of the controversy in this case.[6] The

---

5. The order required that the FBI turn over to the parties certain documents which the FBI had gotten from the Montgomery Police Department. Those documents were clearly "material acquired as part of the performance of" Agent Thetford's duties and, hence, they should not

have been released without the approval of the Justice Department.

6. The *Riley* case involved other aspects of the operation of the Vice and Narcotics Unit. In

government has waived their right to complain about disclosure.[7]

■ The decision of the United States Supreme Court in *Touhy v. Ragen,* 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951), does not compel a different result. In *Touhy,* the Court upheld the right of a government agency, under an appropriate regulation, to refuse to comply with a court order compelling the disclosure of documents pursuant to a subpoena issued to an FBI agent. The court, however, made it clear that such a privilege could be waived.

### III. CONCLUSION

For the foregoing reasons, it is hereby ORDERED:

(1) That the Motion to Allow Issuance of Subpoena filed by the defendants on March 16, 1992 be GRANTED. The defendants may serve and enforce a subpoena on Ned Hersman. The defendants or plaintiffs may also depose him; and

(2) That any party may serve a subpoena on Special Agent Robert Thetford seeking the production of documents which this court has concluded should be disclosed to the parties.[8]

It is further ORDERED that any documents produced by Investigator Hersman or Special Agent Thetford or any information obtained from Investigator Hersman as a result of his deposition be subject to the following restrictions—The dissemination of the information shall be limited to the parties and their counsel. Counsel are hereby directed to notify their clients that no disclosure of the contents of the documents nor of information obtained from Investigator Hersman is to be made without permission of the court.

*Riley,* the government provided portions of reports of interviews done by FBI agents.

**7.** The court applauds the voluntary disclosure by the government of the information referenced above. The court is at a loss to understand, however, why the government, having once decided to cooperate in their resolution of these difficult issues, now seeks to throw roadblocks in the way of justice.

**8.** The government has been notified which documents must be produced. For ease of reference, those documents will be placed under seal by a separate order and made a part of the record in this case.