Christopher VAN HINE, Petitioner

v.

DEPARTMENT OF STATE OF the COMMONWEALTH of Pennsylvania, C. Michael Weaver, Secretary of the Commonwealth of Pennsylvania, and Brett Daniels, Executive Assistant to the Secretary of the Commonwealth and Chief Information Officer, Respondents.

Commonwealth Court of Pennsylvania.

Heard June 23, 2004.

Decided July 2, 2004.

Publication Ordered Aug. 11, 2004.

Wesley J. Rish, Harrisburg, for petitioner.

James J. West, Harrisburg, for respondent.

OPINION BY Judge LEAVITT.

Before the Court is a motion by the Office of Inspector General (OIG) to quash a subpoena *duces tecum* served on OIG by Christopher Van Hine (Petitioner). OIG, which is not a party in Petitioner's civil action, claims that the documents demanded by Petitioner are privileged. The Court denies OIG's motion but will limit the scope of discovery as set forth in this opinion.

Petitioner is the complainant in an action filed in this Court's original jurisdiction alleging violations of Pennsylvania's Whistleblower Law [1] by his employer, the Commonwealth of Pennsylvania, Department of State (Department), C. Michael Weaver, Secretary of the Commonwealth of Pennsylvania and Brett Daniels, Executive Assistant to the Secretary of the Commonwealth and Chief Information Officer (collectively Defendants). [2] As part of dis-

---

**1.** Act of December 12, 1986, P.L. 1559, 43 P.S. §§ 1421–1428. Pursuant to the Whistleblower Law,

> [n]o employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee ... makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste.

43 P.S. § 1423(a).

**2.** Petitioner avers that the Department retaliated against him after he notified OIG of alleged public contract mishandling by the former Deputy Secretary of Administration, Aji Abraham. Specifically, Petitioner claims that, although he was never formally removed from his civil service position, he was constructively discharged as Director of the Bureau of Management Information Systems, replaced with defendant Brett Daniels, reassigned to one of the Department's less desir-

206

covery in the underlying action, Petitioner served a subpoena *duces tecum* on OIG demanding the following:

All investigative reports generated out of an investigation initiated by information provided by [Petitioner] relating to the former Deputy Secretary of Administration, Aji Abraham. This investigation focused on whether or not Aji Abraham had influenced a contract evaluation committee by directing the members of that committee to lower the rate on a company named Data–Core and otherwise manipulated this particular State contract in an inappropriate fashion. This request includes, but is not limited to, interviews conducted with the members of the contract evaluation team concerning Aji Abraham's instructions on lowering Data Core's score.

OIG Brief, Exhibit A.

According to an affidavit of Inspector General Donald L. Patterson, OIG possesses an investigative file (OIG–02–067–ST) that appears responsive to Petitioner's discovery request and contains the following information:

1. the original complaint;
2. Office of Inspector General memoranda summarizing interviews and investigative contacts;
3. employment, vendor and corporation record searches conducted by the Office of Inspector General;
4. Department of State internal agency documents obtained during the course of the investigation including

but not limited to Request for Quote documents, correspondence, memoranda and notes; proposals and related correspondence and memoranda; vendor questions and related documents, memoranda and notes; proposal evaluation documents, memoranda, and notes; and contract and purchase order documents and related correspondence;

5. the Office of Inspector General's Preliminary Report, which contains and reflects the Office of Inspector General's preliminary factual findings and analysis; and

6. the Office of Inspector General's Investigative Report, which contains and reflects the Office of Inspector General's factual findings, legal analysis and recommendations made to the Secretary of the Commonwealth.

OIG Brief, Exhibit C at ¶ 7.

▮▮▮ Pennsylvania Rule of Civil Procedure 4003.1 permits discovery "regarding any matter, *not privileged,* which is relevant to the subject matter involved in the pending action." Pa. R.C.P. No. 4003.1 (emphasis added).[3] As a general rule, Pennsylvania law does not favor evidentiary privileges. *Joe v. Prison Health Services,* 782 A.2d 24, 31 (Pa.Cmwlth.2001). "[E]xceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." *Hutchison v. Luddy,* 414 Pa.Super. 138,

able satellite offices and stripped of any duties suitable for his pay grade. Petitioner seeks reinstatement to his former position, compensatory damages for emotional distress, punitive damages and litigation costs.

3. The Court notes that the analysis could begin and end with Pa. R.C.P. No. 4003.1. The factual data requested by Petitioner is, for the reasons set forth below, relevant to his whis-

tleblower action and not privileged. Evaluative information would not be relevant to Petitioner's action, irrespective of whether it is discoverable or privileged. OIG does not distinguish the information in its investigative file on that basis, opting instead to claim that the entire file is privileged. Hence, the Court must proceed to an analysis of the privileges asserted by OIG.

146, 606 A.2d 905, 908 (1992) (quoting *Herbert v. Lando,* 441 U.S. 153, 175, 99 S.Ct. 1635, 1648, 60 L.Ed.2d 115 (1979)). Thus, courts should accept testimonial privileges "only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth." *In re Grand Jury Investigation,* 918 F.2d 374, 383 (3d Cir.1990) (quoting *Trammel v. United States,* 445 U.S. 40, 46, 100 S.Ct. 906, 910, 63 L.Ed.2d 186 (1980)).

*Id.* (quoting *Commonwealth v. Stewart,* 547 Pa. 277, 282–283, 690 A.2d 195, 197 (Pa.1997) (analyzing scope of clergy-communicant privilege in homicide trial)). OIG contends that its entire investigative file is shielded from discovery pursuant to executive privilege, deliberative process privilege, self-critical analysis privilege and investigative privilege. Petitioner counters that he is seeking only objective factual information that is not subject to any of the asserted privileges.

■ The Court may quickly dispense with OIG's claim of investigative privilege. OIG is not a Commonwealth agency that was created by the General Assembly to investigate and bring actions to enforce a body of statutory law. The OIG refers the Court to several cases that have recognized the concept of investigative or "law enforcement evidentiary privilege." *See, e.g., Black v. Sheraton Corporation of America,* 564 F.2d 531, 541 (1977); *Pastore v. Department of Insurance,* 125 Pa. Cmwlth. 611, 558 A.2d 909 (1989). Each case involved an agency created by Congress or by the General Assembly to enforce a body of statutory law. The privi-

lege has been recognized lest it harm the law enforcement efforts of the agency.

The OIG is not a civil or criminal law enforcement agency. Indeed, it has no legal existence separate from that of the Governor.[4] The OIG was created by the Governor as part of his Executive Office. The OIG's mission is:

a. To deter, detect, prevent, and eradicate fraud, waste, misconduct, and abuse in the programs, operations, and contracting of executive agencies. . . .

b. To keep the heads of executive agencies and the Governor fully informed about problems and deficiencies relating to the administration of programs, operations, and contracting in executive agencies, [and]

c. To provide leadership, coordination, and control over satellite Inspector General Offices in designated executive agencies to insure a coordinated and efficient administration of duties and use of staff.

Executive Order 1987–7, § 1; OIG Brief, Exhibit B. The Inspector General serves at the behest of the Governor and is responsible for initiating, supervising and coordinating internal investigations that relate to fraud, waste, misconduct or abuse in executive agencies. *Id.* at § 2(a). OIG makes recommendations to the Governor and the Office of General Counsel based upon its investigations. *Id.* at § 2(b). Significantly, OIG does not have authority to initiate criminal, civil, administrative or disciplinary actions on behalf of the Commonwealth; the General Counsel is responsible for referring such matters to the appropriate state agencies. *Id.* at § 2(c), (d). Because OIG is not a Commonwealth

---

4. The OIG is to the Governor's Executive Office as a company division is to a corporation. The division may carry out a particular func-

tion for the corporation of which it is part, but it is not a legal person separate from that corporation.

agency, created by statute, it may not claim any "investigative privilege." [5] With this background in mind the Court considers the remaining privileges asserted by OIG.

*Executive Privilege* [6]

■■■ The governmental privilege, sometimes referred to as the deliberative process, executive or law enforcement privilege, protects documents that, if disclosed, would "seriously hamper the function of government" or contravene the public interest. *Chladek v. Commonwealth*, 1998 WL 126915 (E.D.Pa.1998) (quoting *Siegfried v. City of Easton*, 146 F.R.D. 98, 101–102 (E.D.Pa.1992)); *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 342 (E.D.Pa.1973).

> Such a privilege is not absolute; it must be demonstrated on a case by case basis. *See United States v. Reynolds*, 345 U.S. 1, 8 [73 S.Ct. 528, 97 L.Ed. 727] (1953). The court is called on to perform a balancing function—the interest of the government in ensuring the secrecy of the documents in question as opposed to the need of the private party to obtain discovery. The relative degree of the conflicting necessities will determine how each case is decided.

*Frankenhauser*, 59 F.R.D. at 343 (quoting *Coalition for Adequate Urban Planning v. City of Philadelphia*, Civil No. 72–1912 (E.D.Pa.1973)).

■■ To support a claim for the [executive] privilege, at least three requirements must be fulfilled.... "The head of the agency claiming the privilege must personally review the material, there must be a 'specific designation and description of the documents claimed to be privileged,' and there must be 'precise and certain reasons for preserving' the confidentiality of the communications. Usually such claims must be made by affidavit.' "

*Chladek*, 1998 WL 126915 at *3 (quoting *United States v. O'Neill*, 619 F.2d 222, 225–226 (3d Cir.1980)).

Here, OIG has properly asserted executive privilege by offering the affidavit of Donald L. Patterson, Inspector General of the Commonwealth of Pennsylvania (Patterson). OIG Brief, Exhibit C. As indicated above, Patterson personally reviewed the OIG file at issue and generally describes its contents in his affidavit. *Id.* at ¶ 7. Patterson asserts the following arguments against disclosure:

> 10. The Investigative Report and other investigative materials that Petitioner seeks contain and reflect pre-decisional, executive, deliberative and evaluative information, which includes opinions, analyses, and summaries of interviews that should not be disclosed, and which was intended to be used to estab-

---

**5.** OIG argues that the act commonly referred to as the Right to Know Law, Act of June 21, 1957, P.L. 390, *as amended*, 65 P.S. §§ 66.1–66.9, forms the basis for an investigative privilege by exempting from the definition of public records "any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties." 65 P.S. § 66.1. The Court finds that the Right to Know Law has no application here. Petitioner is the complainant in a civil action seeking

discovery of certain information from OIG pursuant to the Pennsylvania Rules of Civil Procedure. The Right to Know Law is not mentioned once in Petitioner's brief to this Court.

**6.** As OIG notes in its brief, Pennsylvania courts have not had an opportunity to examine the executive privilege as it relates to OIG. Consequently, this Court shall look to federal decisions that have done so for guidance.

lish or change government policies, programs, and initiatives.

11. Disclosure of the Office of Inspector General's investigative file would make future investigations more difficult because individuals who provide information to the Office of Inspector General reasonably believe that their identities and statements will remain confidential. Employees of the Department of State or other individuals that the Office of Inspector General interviewed during its investigation may suffer reprisals or notoriety because they cooperated with the Office of Inspector General. Allowing the unnecessary disclosure of the sources of the Office of Inspector General information would impair future investigations because it discourages individuals from providing information.

12. Disclosure of the Office of Inspector General's Investigative Report and investigative file would chill governmental self-evaluation and program improvement and the free and open discussion of policy and program improvements. Investigators, supervisors, and the attorneys who work on Office of Inspector General investigations are expected to offer candid opinions, back and forth, regarding the conduct of investigations. Some of the dialogue is committed to and expressed in internal notes and memoranda, as are individual investigators' thoughts and comments about the process of the ongoing investigation.

13. The expression of the deliberations, and the "give and take" necessary for the Office of Inspector General to perform its mission under Executive Order 1987–7, would

be significantly hampered if the documents created by the Office of Inspector General were the subject of discovery in litigation.

14. The resulting harm to the Office of Inspector General's internal deliberation and investigative process far outweighs any potential benefit to the public or litigants from disclosure of the documents in that, if these documents were revealed, it would tend to chill the free and open communication among those conducting investigations, those preparing investigative reports, and those making programmatic recommendations at the Office of Inspector General.

*Id.* at ¶¶ 10–14.

In considering OIG's position, we are guided by the District Court's decision in *Frankenhauser*, which identified ten factors that federal courts consider when balancing the interests of the government in ensuring the secrecy of documents against the need of a private party to obtain discovery:

(1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information;

(2) the impact upon persons who have given information of having their identities disclosed;

(3) the degree to which governmental self-evaluation and consequent program involvement will be chilled by disclosure;

(4) whether the information sought is factual data or evaluative summary;

(5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely

to follow from the incident in question;

(6) whether the police investigation has been completed;

(7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation;

(8) whether the *Petitioner's* suit is non-frivolous and brought in good faith;

(9) whether the information sought is available through other discovery or from other sources; and

(10) the importance of the information sought to the Petitioner's case.

*Frankenhauser*, 59 F.R.D. at 344. *See also Chladek; Haber v. Evans*, 2004 WL 963995 (E.D.Pa.2004) (federal cases utilizing *Frankenhauser* factors to decide motion by OIG to quash subpoena).

The Court begins with the fourth *Frankenhauser* factor relating to the type of information sought by Petitioner. In explaining this factor, the *Frankenhauser* court wrote that "the [executive] privilege protects intragovernmental advisory opinions and recommendations relating to policy-making, but not simple factual reports and summaries." *Frankenhauser*, 59 F.R.D. at 344. It is clear from Petitioner's brief that he is interested only in the factual data contained in OIG's investigative file, and the Court can perceive no reason not to disclose such information.

Also weighing in favor of disclosure of factual information is the tenth *Frankenhauser* factor, which requires the Court to consider the importance of the information sought to the Petitioner's case. Federal courts have identified this as the most important consideration in the balancing process. *See, e.g., Crawford v. Dominic*, 469 F.Supp. 260, 263 (E.D.Pa.1979). The heart of Petitioner's case is that his complaint to or cooperation with the OIG in its investigation of alleged irregularities in the procurement procedures used at the Department led to the Department's retaliation against him. In his whistleblower action, Petitioner must "show by a preponderance of the evidence that, prior to the alleged reprisal, [he] had reported or was about to report in good faith, verbally or in writing, an instance of wrongdoing or waste to the employer or an appropriate authority." 43 P.S. § 1424(b). Under the Whistleblower Law, a "good faith report" is "[a] report of conduct defined in this act as wrongdoing or waste which is made without malice or consideration of personal benefit and which the person making the report has reasonable cause to believe is true." 43 P.S. § 1422. Clearly the results of OIG's investigation, including the witness interviews, will shed light on whether Petitioner had reasonable cause to believe his allegations against Aji Abraham were true. Along the same lines, and with respect to the eighth factor, the Court finds no reason to discount Petitioner's whistleblower complaint as frivolous or brought in bad faith.

The ninth *Frankenhauser* factor asks whether the information sought is available through other discovery or from other sources. OIG argues that Petitioner can interview the same witnesses and seek discovery of other materials directly from the Department. The Court finds this argument unconvincing. OIG conducted its investigation in 2002 promptly after the alleged misconduct by Aji Abraham. OIG's investigative file is ostensibly comprehensive and reliable. As noted by the District Court in *Frankenhauser*, "[t]he mere lapse of time is in itself enough to justify production of material otherwise protected as work product.... The notion that memory fades with the passage of time needs no demonstration." 59 F.R.D. at 345 (quoting *United States v. Murphy Cook & Co.*, 52 F.R.D. 363, 365 (E.D.Pa.1971)). Moreover, Petitioner's discovery requests to the

Department have resulted in the production of only two documents, a letter from Aji Abraham to Secretary of State C. Michael Weaver and three pages of largely unintelligible handwritten notes. The Court concludes that OIG is the only entity that possesses a complete file on the Abraham matter, weighing in favor of disclosure.

OIG emphasizes the first two *Frankenhauser* factors as weighing against disclosure of the witness statements and interview summaries in its file. OIG posits that complainants and other individuals who provide information to OIG expect that their identities and statements will remain confidential. Allowing disclosure of such information, OIG argues, will discourage individuals from providing information to OIG in the future thereby thwarting the investigative function of the agency.

In *Chladek*, 1998 WL 126915 at *3, the District Court considered and rejected similar assertions by OIG:

The OIG's "broad speculations of harm potentially flowing to the officers involved in generating the withheld documents are simply insufficient to support a finding of privilege under the strict standards described above." *Torres*, 936 F.Supp. at 1211 (refusing to apply privilege where police officers provided information to Internal Affairs division with expectation that their identities would remain confidential, even where officers argued that "production . . . would have a 'devastating impact on this Department's ability to ferret out those who violate the public trust' " "and disclosure would destroy 'the integrity of the investigative process so necessary to fulfill . . . obligation[s] to the community.' "). Moreover, the OIG's claim that future investigations would be impeded is not persuasive, given the test courts apply prior to divulging such a report.

*Frankenhauser*, 59 F.R.D. at 344 ("[W]e do not believe that rare instances of disclosure pursuant to court order made after application of the balancing test comprising detailed standards such as those enumerated here would deter citizens [or officers] from revealing information"); *Crawford*, 469 F.Supp. at 264 ("I do not accept the general proposition that citizens or fellow police officers will be less likely to give information concerning a police officer's conduct because in a few instances that information may be used in a later lawsuit.").

Based upon this compelling analysis, the Court finds that the summaries of interviews, including the identity of the witnesses, fall under the category of factual data, are discoverable and must be disclosed. To the extent that subjective, evaluative information is contained therein OIG may redact such information.

Finally, OIG contends, with regard to the third *Frankenhauser* factor, that disclosure will stifle OIG's internal deliberations, self-evaluation and the free and open discussion of policy and program improvements it eventually transmits to the Governor and other executive agencies. The Court has adequately addressed OIG's concerns by permitting the agency to redact evaluative information, which would include the policy recommendations made by OIG personnel to the Governor, his advisors or cabinet.

In light of the foregoing, the Court finds that, on balance, the *Frankenhauser* factors weigh in favor of disclosing the factual contents of OIG's investigative file. OIG may redact any information that it deems to be evaluative in nature.

*Deliberative Process Privilege*

The Pennsylvania Supreme Court has stated that "[t]he deliberative process privilege permits the government to withhold documents containing 'confi-

dential deliberations of law or policymaking, reflecting opinions, recommendations or advice.'" *Unified Judicial System v. Vartan*, 557 Pa. 390, 399, 733 A.2d 1258, 1263 (1999) (opinion announcing judgment of the Court) (quoting *Redland Soccer Club, Inc. v. Department of the Army of the United States*, 55 F.3d 827, 853 (3d Cir.1995)). The purpose of the privilege is to allow the free exchange of ideas and information within government agencies. *Id.* at 1264. To claim the privilege, the government must show that (1) the communication was made before the deliberative process was completed and (2) the communication was deliberative in character, *i.e.*, it was a direct part of the deliberative process in that it made recommendations or expressed opinions on legal or policy matters. *Id.* Information that is purely factual, even if decision-makers used it in their deliberations, is usually not protected. *Id.*

The similarities with executive privilege are apparent, and in the Court's view the two doctrines are coterminous. Indeed, federal decisions do not distinguish between the two. *See, e.g., Chladek*, 1998 WL 126915 at *2. In any event, the Court has already considered OIG's representations that, in addition to the factual data sought by Petitioner, its investigative file contains confidential deliberations of law or policymaking reflecting opinions, recommendations or advice. Since OIG will be permitted to redact such non-discoverable evaluative information, the Court finds it unnecessary to consider the deliberative process privilege as distinct from executive privilege.

*Self–Critical Analysis Privilege*

▮ The self-critical analysis privilege remains largely undefined and has not generally been recognized. *Joe v. Prison*

*Health Services, Inc.*, 782 A.2d 24, 34 (Pa. Cmwlth.2001).[7] This privilege is grounded on the premise that disclosure of documents reflecting candid self-examination will deter or suppress socially useful investigations and evaluations or compliance with the law or professional standards. *Id.* Those courts which have recognized a self-critical analysis privilege have generally required that the party asserting the privilege demonstrate that the material to be protected satisfies at least three criteria: the information must result from critical self-analysis undertaken by the party seeking protection; second, the public must have a strong interest in preserving the free flow of the type of information sought; and the information must be of the type whose flow would be curtailed if discovery would be allowed. *Id.*

Assuming, *arguendo*, that a self-critical analysis privilege would be recognized in Pennsylvania, it "protects only subjective analysis designed to have a positive societal effect and does not apply to objective factual or statistical information." *Id.* Thus, if we were to apply the self-critical analysis privilege, it would yield the same result as our application of the executive privilege. Factual data in the OIG investigative file is discoverable whereas evaluative analysis is not.

*Conclusion*

In accordance with the foregoing, OIG's motion to quash is denied. OIG must comply with Petitioner's subpoena *duces tecum* by disclosing the contents of its investigative file numbered OIG–02–067–ST. Discovery shall be limited to factual information and summaries, however, with OIG reserving the right to redact any and all information it deems evaluative in nature.

---

**7.** This Court noted in *Joe* that no Pennsylvania cases, other than federal court cases, have discussed a self-critical analysis privilege. *Joe*, 782 A.2d at 34 n. 7.

## ORDER

AND NOW, this 2nd day of July, 2004, the Motion to Quash Subpoena *Duces Tecum* filed by the Office of Inspector General is hereby DENIED; the scope of discovery by Petitioner Christopher Van Hine is limited to factual information in accordance with the attached opinion.